SABRE SHIPPING CORPORATION,
Plaintiff,

v.

AMERICAN PRESIDENT LINES, Ltd.,
et al., Defendants.

JAPAN LINE, Ltd., et al., Third-Party
Plaintiffs,

v.

AMERICAN PRESIDENT LINES, Ltd.,
et al., Third-Party Defendants.

No. 66 Civ. 3617.

United States District Court
S. D. New York.

April 24, 1969.

**1340**

United States Lines, Inc., Waterman Steamship Corporation and Wilh. Wilhelmsen (Robert L. Clare, Jr., and Dennis J. Helms, New York City, of counsel).

Kirlin, Campbell & Keating, New York City, for defendant P & O Orient Lines (Elmer C. Maddy, New York City, of counsel).

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for defendants Six Trans-Pacific Lines (Edwin Longcope, New York City, of counsel).

Baker & McKenzie, New York City, for defendants and third party plaintiffs Japan Line, Ltd., Kawasaki Kisen Kaisha, Mitsui O.S.K. Lines, Nippon Yusen Kaisha, Ltd. and Yamashita-Shinnihon Steamship Company, Ltd. (Philip A. Ryan, Washington, D. C., and Gregor F. Gregorich, New York City, of counsel).

Poles, Tublin, Patestides & Stratakis, New York City, for third party defendant Marchessini Lines (John G. Poles, New York City, of counsel).

## OPINION

RYAN, District Judge:

Fourteen third-party defendants, who have settled wih plaintiff and obtained from it dismissal of the complaint without prejudice and a Covenant Not to Sue, move for summary judgment on the third party complaint. Familiarity with the claim in suit is presumed from the decision of this Court in Sabre Shipping Corp. v. American President Lines, Ltd., 285 F.Supp. 949; aff'd Japan Line, Ltd. et al. v. Sabre Shipping Corporation, 407 F.2d 173, 2nd Circuit, January 14, 1969. It is sufficient on this motion to state that the complaint charged third party plaintiffs and moving defendants with violation of the antitrust laws and destruction of plaintiff's business by a conspiracy effected under authority of the Japan Conference and the Hong Kong Conference, of which all defendants were members, under F.M.C. Agreement 3103 and 5700 respectively. Plaintiff alleged that the reduction of rates effected by defendants which drove it out of the

Strasser, Spiegelberg, Fried & Frank, New York City, for plaintiff (Leon Silverman and Victor Friedman, New York City, of counsel).

Shearman & Sterling, New York City, for defendant American President Lines, Ltd. and third-party defendants American President Lines, Ltd., Barber-Fern-Ville Lines, Blue Sea Line, Fearnley & Eger, Inc., Fern-Ville Lines, Lykes Bros. Steamship Co., Inc., A. P. Moller-Maersk Line, Prince Line, Ltd., States Marine Lines, Inc., United Philippine Lines, Inc.,

competition was outside the scope of the Conference and the protection of the Shipping Act. The main complaint was filed in October, 1966; in July, 1967 twenty-five of the defendants settled with plaintiff and entered into a "Covenant Not to Sue and Covenant Not to Sue Further", and a Stipulation of Dismissal without prejudice as to those defendants was so ordered by the Clerk of the Court in August, 1967. The third party plaintiffs, who are five Japanese Lines, refused to join in the settlement and, after moving unsuccessfully for summary judgment to dismiss the complaint, filed the third party complaint on August 14, 1968 against some of the settling defendants.

The third party complaint alleges that the third party action arises under the Sherman and Clayton Antitrust Acts; that it is brought pursuant to Rule 14, F.R.Civ.P., against 17 third party defendants who are or may be liable to third party plaintiffs for all or part of the plaintiff's claim against them; and that all these defendants as well as the two Conferences maintain a place of business in this District. After reciting the background of the suit—the claim by SABRE in the main suit that defendants conspired to monopolize the trade and drive SABRE out of business; the settlement and Covenant between the plaintiff and 25 defendants; and the dismissal of the action against these defendants; and the third party plaintiffs' exclusion from the settlement and dismissal—the third party complaint pleads two separate counts.

In the first count, third party plaintiffs deny liability to plaintiff SABRE but claim that, if the acts alleged were done, they were the joint acts of third party plaintiffs and third party defendants; that any liability of the Japanese Lines will arise out of their joint acts; and that the third party defendants will be liable to the Japanese Lines, if SABRE recovers a judgment against them.

In the second count, third party plaintiffs plead Paragraph 32 of the Conference Agreement, to which they and some of the third party defendants were signatories, which they allege provides that if legal expenses are incurred by a member as a result of compliance with the agreement and without fault on the part of the member, these expenses shall be prorated among the members for the account of the Conference. They then charge that any expenses and damages incurred by the five Japanese Lines and any liability to SABRE will have been incurred as a result of compliance with F.M.C. 3103 and will arise out of the joint acts of the third party plaintiffs and third party defendants who will be liable over to them. The prayer for relief asks judgment for all sums that may be adjudged in favor of SABRE, together with the "legal expenses" in both actions.

The moving defendants have interposed a general denial and plead the following affirmative defenses: failure to state a claim; failure to perform a condition precedent to establishing liability under Paragraph 32 of the Agreement; failure to join the Conference and all the signatories to the Agreement; reduction of the SABRE claim by payment from the third party defendants; and reduction of third party plaintiffs' claim in that they represent 9 signatories to the Agreement. Five of the defendants further defend on the ground that they were never signatories to the Agreement during any relevant period. All defendants admit that they maintain an office for the transaction of business here.

The Covenant Not to Sue and Not to Sue Further entered into on July 27, 1967 between SABRE as Covenantor and 25 defendants as Covenantees, among whom are the two Conferences, recites that the consideration for its execution does not represent full compensation for the damages alleged to have been suffered by plaintiff, that plaintiff retains all claims and causes of action against the other defendants in the action, and that the agreement is not a release to any

person whosoever including the Covenantees in the pending suit or any other suit.

The theories underlying the first count of the third party complaint according to the Japanese Lines are that, since the liability charged under SABRE's antitrust complaint is joint, all conspirators are joint tort-feasors and therefore liable for contribution to one another; and that since the Japanese Lines are not in pari delicto with the settling defendants, they are entitled by operation of law to complete indemnity from those defendants. The theory of the second count is that, since Conference Agreement 3103 to which all defendants are parties provides for the sharing of liability among all the Conference members for acts done in compliance with the Agreement, Japanese Lines are entitled to contribution or indemnity by contract for its damages as well as its costs in defending the SABRE action. In short, third party plaintiffs seek contribution or indemnity either in law or by contract. On the oral argument, third party plaintiffs argued for the first time but with great emphasis that the settlement is invalid and in violation of Section 15 of the Shipping Act, because it was not filed with the Commission as an Agreement "pooling or apportioning * * * losses."

The moving defendants answer that federal common law, which must be applied since the complaint and third party complaint rest on the antitrust laws, makes no provision for contribution among joint tort feasors second, that there can be no right of indemnity by operation of law in that such a right rests on the theory of passive and active tort which will not lie under allegations of joint wrongdoing; and, finally, that the alleged indemnity liability under the Agreement cannot arise until there has been a determination by the Japan Conference (which has not been named as a third party defendant) by a two thirds vote of its members that the Japanese Lines incurred the legal expenses without fault. It is not in dispute that this determination has not been and will not be made because more than a majority of the Conference membership participated in the settlement with plaintiff.

The moving third party defendants also contend that, if the alleged wilful violation of the antitrust laws be held to be an act done in compliance with the Conference Agreement, Paragraph 32 of the Agreement is unenforceable as against public policy. They also urge that the third party complaint must be dismissed since the Conference, against whom such a claim must be asserted is not a party defendant; and that, in any event, it appears that five of the third party defendants were not parties to the Conference Agreement during the period in suit (1962–1963) and cannot be charged with liability at all under the Agreement.

Although the third party complaint expressly alleges that it arises under the federal antitrust laws, it is brought pursuant to Rule 14 and does not allege any independent antitrust claim. Both parties seem to agree that the claim pleaded in the third party complaint should be controlled by federal common law, but they differ, however, as to what that law is or should be. Third party defendants urge that, since in the main complaint the claimed tort is based on the federal antitrust laws, federal common law which does not permit contribution must be applied, irrespective of local law. They point out, however, that even local common law permitting contribution exists in only a few states, and that, even in those states having statutes permitting contribution, they are generally not applied in the case of intentional torts such as violations of antitrust laws.

Japanese Lines seem to contend (although it is difficult to grasp their quicksand theories) that, in the event the Court decides that federal law applies, in the absence of clear federal statutory or case law, the Court should formulate a federal law which favors contribution. They add that this should be done by the Court taking into consideration other federal statutes so providing—federal local law as fashioned for the District of Columbia and the sub-

stantive local law found in statutes of those states favoring contribution.[1] In the event that the Court should determine that a federal law as so fashioned does not apply, then to determine what local law to apply the third party plaintiffs say the Court should look to a "plethora of facts", which would require a full trial for that determination. This trial, they envision, would inquire into matters such as the nationality of the members of the Conference; the place of the alleged conspiracy; the overt acts and the injury; the frequency of sailings and the ports touched, etc.; and "the relative economic interests of the many jurisdictions involved in this international situation," by which they mean the economic interests of Japan, which they contend permits contribution. We interpret this argument as saying that, although it is not so labelled, this Court must apply a federal conflicts of law rule, or choice of local law rule, to determine what local law should control the rights of the defendants inter sese.

We must here note that, while the Covenant Not to Sue and Not to Sue Further did not release the Covenantees and expressly stated that the consideration received from them was not compensation in full, this merely served to clarify and protect the rights of the plaintiff as against all the defendants—the settling defendants and the Japanese Lines —it did not determine the rights of the defendants among themselves.

■ The economic interests with which this Court is concerned primarily are of those of the United States, upon whose trade and commerce the effects of the conspiracy are alleged to have fallen. That charge is the basis of the jurisdiction of this Court. The claims here asserted are federally created by Congressional enactment and we must apply federal law to determine the rights of the parties. It is still the law that:

> "When a federal statute condemns an act as unlawful the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. To the federal statute and policy, conflicting state law and policy must yield." Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942).

■ Certainly the respective rights of the antitrust defendants among themselves are questions touching upon the extent and nature of the legal consequences of the condemned acts, involving decision of a federal, not a state, question. (Deitrick v. Greaney, 309 U.S. 190, 200–201, 60 S.Ct. 480, 84 L.Ed. 694).

■ We know that, in cases of unintentional torts, under federal common law there is no contribution and we find *no reported case in which contribution was permitted under federal common law for intentional torts.*

The English common law rule, was that there was no contribution in the case of deliberate tortious acts (Merryweather v. Nixan, 8 Term Rep. 186, 101 Eng. Rep. 1337 (K.B. 1799)).

■ In the United States, the federal common law rule, not limited to intentional torts, emerges from Union Stock Yards Co. v. Chicago, B. & Q. R. Co., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453 (1905), which holds that, as between two defendants in pari delicto, contribution or indemnity would not lie at the suit of the defendant who had been sued individually, had been found actively negligent, and had paid the judgment. The reason

---

1. The trend of state law appears to be in favor of having all wrongdoers contribute financially to a recovery. Twenty-three (23) states have legislation favoring contribution in varying degrees; six of them, including New York, limit contribution to joint judgment defendants while the others have adopted in whole or in part the Uniform Contribution Among Joint Tort Feasors Act. (See Apportionment of Damages and Contribution Among Co-Conspirators in Antitrust Treble Damage Actions—Peter G. Corbett, 1962, Fordham Law Review, III et seq.)

given was that contribution or indemnity lies only in those cases where the defendant sued is found to be only passively negligent. The Court wrote that:

" * * * the general principle of law is well settled that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done." (P. 224, 25 S.Ct. p. 227)

The Court cited the sidewalk cases of liability without fault as the classic exception to the rule. Because of the finding that the defendant sued had been actively negligent, the Court held that the case did not come within that exceptional class, but it left open the question of what the rule would be if the plaintiff had sued "both companies jointly," saying "there seems to be a diversity of holding upon the subject of * * * liability under such circumstances, in courts of high authority." (P. 223, 25 S.Ct. p. 227) Although the Court spoke of contribution and indemnity, it used the terms interchangeably for it appears that the defendant was seeking indemnity not contribution, which, as the Supreme Court has recently pointed out, are two different concepts (Federal Marine Terminals, Inc. v. Shipping Co., *infra).

Almost fifty years after the Union Stock Yards case, in Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, the Court made it clear that it had no intention of departing from the common law rule against contribution in the following language:

"In the absence of legislation, courts exercising a common-law jurisdiction have generally held that they cannot on their own initiative create an enforceable right of contribution as between joint tortfeasors. [Citing the *Union Stock Yards* case]

\* \* \* \* \* \*

"We have concluded that it would be unwise to attempt to fashion new judicial rules of contribution and that the solution of this problem should await congressional action." (P. 285, 72 S.Ct. p. 279)

That the Court felt bound not to depart from the common law rule of the *Union Stock Yards* case is even more significant in view of the fact that it was there exercising not common law but admiralty jurisdiction which it recognized was free to fashion rules and would have done so "if wholly convinced that it would best serve the ends of justice." (P. 285, 72 S.Ct. p. 280)

What the Court has done in the interests of justice in federal maritime law where the shipowner is or may be held liable without fault, is to permit impleader of the stevedore on the theory not of contribution but of indemnity, much as that discussed in the *Union Stock Yards* case. The claim recognized is that of an independent wrong done by the impleaded defendant, not to plaintiff but to the defendant sued, arising out of a breach of a contract for services to be rendered by the third party defendant *and a concomitant right on the part of the third party defendant* to counterclaim. This was the holding of Federal Marine Terminals, Inc. v. Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 1152, 22 L.Ed.2d 371 (Decided April 1, 1969) in language which shows how deep-rooted in our jurisprudence is the common law rule against contribution:

"This holding is in no wise a departure from our decision in Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 285 [72 S.Ct. 277, 280, 96 L.Ed. 318], that we would not 'fashion new judicial rules of contribution' between the shipowner and the stevedoring contractor as joint tortfeasors. Marine Terminals is not seeking contribution. It is not asking Burnside to share responsibility for their joint negligence with respect to McNeill. Rather the counterclaim seeks recovery of the full amount of Marine Terminals' liability under the Act to McNeill's representative; and it is founded not on Burnside Shipping's wrong to McNeill but on its independent wrong to Marine Terminals."

But this theory cannot be applied to the claim here for it is charged that all the defendants acted as joint conspirators under the one agreement and there can be no independent duty owed from one to the other. The legal considerations underlying indemnity find no room for application to co-conspirators who act as agents for one another and are particeps criminis (De Haas v. Empire Petroleum Co., D.C., 286 F.Supp. 809, 815).

The only antitrust case cited to the Court which discussed the question, al-. though containing interesting obiter, is not really in point. Goldlawr, Incorporated v. Shubert, 3 Cir., 276 F.2d 614, involved a third party complaint not cast on a theory of contribution or indemnity for the consequences of the wrong alleged in the main complaint. The third party complaint pleaded a separate additional wrong done to plaintiff by third party defendant. The Court, pointing this out, concluded that the defendant and third party defendant, under the allegations of the third party complaint, were not joint tortfeasors at all so that the question of the right of contribution from third party defendants to defendants was not present. On the basis of this independent federal tort pleading in the third party complaint, the Court held that it was governed by "federal common law with no right of contribution between tort-feasors", and said that, on these facts, the Pennsylvania statute providing for contribution was not applicable because the statute applied to two or more persons jointly or severally liable in tort for the same injury and not liable for separate torts.

There is no provision in the antitrust statutes providing for contribution, but the third party plaintiffs urge that the fact that such a provision is found in the Securities Act of 1933 and 1934 should lead this Court to hold that, in the absence of statute, such a right should be recognized as support for allowing contribution among antitrust conspirators (DeHaas v. Empire Petroleum Co., *supra*). All that this demonstrates is that Congress, aware of the rule against contribution, saw fit to provide for it explicitly in the securities statutes but not in the enforcement of antitrust laws which dominate so much of our litigation, and that no such right should be implied.

Finally, they would have us adopt and follow decisions emanating from the District Court in Washington, D. C., particularly Knell v. Feltman, 85 U.S.App. D.C. 22, 174 F.2d 662, which limiting the *Merryweather* rule to intentional torts, held to the rule adopted in 1942 for the District Court that, as between two unintentional wrongdoers, that is, two defendants found to be negligent whose negligence contributed to plaintiff's harm, there could be contribution without the need for a joint judgment against them. Since even there the rule is limited to unintentional torts, it emphasizes the difference between those and intentional torts, as we have here, and to be of no avail to third party plaintiffs even if applicable.

Moreover, in applying this limited rule of contribution, the District Court for the District of Columbia, in order not to compel the settling defendants to defend a case "as unfair to the settling tortfeasor who has bought his peace", will compel him to pay his proportionate share of whatever judgment has been received by the plaintiff if the jury decides that there should be contribution. It is apparent that, even there, the rights of the settling defendants are of concern to the Court.

In 1963, this Circuit in Williams v. Pennsylvania R. R. Co., 313 F.2d 203, permitting impleader of the plaintiff's employer after the plaintiff had recovered against the tortfeasor on a theory of negligence, reminded us that it did so on a theory of breach of warranty, saying "any judgment over against Spencer [the employer] on a theory of contribution seems out of the question", citing *Halcyon* and recalling the Supreme Court's refusal to depart even in admiralty cases "from the common law rule precluding

contribution by joint tortfeasors * *." (P. 210).

■ If The Supreme Court was reluctant to depart from the rule as between unintentional tortfeasors, whose sole culpability was one of lack of care, how presumptuous it would be for this Court to do so for the benefit of intentional wrongdoers, whose acts are so severely castigated by Congress, to the point of providing criminal sanctions including imprisonment. Congress is well aware of the state trend toward contribution; it must be presumed to have good reason for not modifying the common law rule, application of which does no violence to Congressional intent. The private antitrust suit serves an important public purpose of presenting "an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws." (Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L. Ed.2d 982.) If one or two defendants sued by a plaintiff, who alleges in this case it has been driven out of business, could turn around and implead all other persons directly and indirectly involved in the alleged conspiracy, it could well spell death to the plaintiff's suit and thus thwart the statutory purpose. Plaintiff's choice to sue those of the defendants it considers most culpable or most capable of making him whole would be totally nullified, and control of his action would be taken out of his hands. It would operate to prevent his receiving prompt recovery since no defendant would settle with him if he was to find himself back in the suit as a third party defendant.

■ We conclude that, even though plaintiff had originally sued all defendants as joint tortfeasors, it had the absolute right to settle with some of them and covenant not to continue its suit against them, while reserving its right to continue against the non-settling defendants.

■ None of the cases we have discussed involved a suit by a plaintiff against several joint tortfeasors. In the case of defendants sued jointly, the common law rule was that the plaintiff could enforce its judgment against one or some or all of the defendants.[2] That is still the rule in Sherman Act cases; see the concurring opinion of Mr. Justice White in Perma Life Mufflers, Inc. v. International Parts Corp., *supra*, at page 144, 88 S.Ct. at page 1987:

"* * * a third party proving an illegal undertaking between two defendants may recover for all damages caused by the combination. Those damages normally may be had from either or both defendants without regard to their relative responsibility for originating the combination or their different roles in effectuating its ends. This is because neither defendant, if he acted alone, could be charged with the violation; some degree of participation by both is essential to create a combination within the reach of § 1 of the Sherman Act. Either defendant is therefore deemed to have been a material cause of the damages, sufficient to permit a third party to recover."

Absent possible separate contractual undertaking under Paragraph 32 of the Conference agreement, there was therefore no right attaching to defendants among themselves prior to judgment, which could not be extinguished by plaintiff's dismissing as against the settling defendants.

■ The first count of the third party complaint on a theory of contribution or indemnity is dismissed.[3]

---

2. By statute in New York, C.P.L.R. 1401, the joint judgment defendant who has paid the judgment may enforce contribution of the pro rata share from co-defendants.

3. Defendants' contention that the settlement agreement is invalid because it was not filed with and approved by the Federal Maritime Commission is without substance. The agreement under consideration in Volkswagenwerk Aktiengesellschaft v. FMC, 390, U.S. 261, 88 S.Ct. 929, 19 L. Ed.2d 1090, upon which defendants rely for this argument, affected freight rates

Whatever the ultimate merits of the second count seeking indemnity or contribution for "legal expenses" under Paragraph 32, we think that it does state a naked, if contingent, claim in contract. Whether the agreement to share "legal expenses" would embrace antitrust damages and whether the Japanese Lines, if found liable to plaintiff, would be found by the Conference to have incurred them without fault, or to have caused them by failing to settle, thus preventing the condition precedent to liability from coming into existence, are questions which cannot now be decided and which can well await the determination of SABRE's claim against the Japanese Lines.

Third party defendants' motion is granted to the extent that partial summary judgment is granted, dismissing with costs the first count of the third party complaint only.

The third party defendants' motion to dismiss the second count asserted is denied. This contract claim is presented only with the final determination of SABRE's action against the Japanese Lines, and further proceedings on the third party complaint should abide that event. To permit its prosecution simultaneously with the prosecution of SABRE's claim would operate only to delay, if not hinder this. While we hold this third party claim for expense reimbursement to the Japanese Lines under the contractual terms of the Conference agreement should not be dismissed, we have concluded that all proceedings to enforce this claim should be served under Rule 14(a) F.R.Civ.P. and be stayed until a final determination of SABRE's complaint or further order of the Court, and without prejudice to the third party defendants then asserting all available defenses.

As we have not reached a final determination on all the claims of the third party complaint, we do not certify the dismissal of the first count under Rule 54, F.R.Civ.P., for immediate entry of judgment; nor do we certify this dismissal or the severance and stay of prosecution of the second count under Section 1292 for immediate appeal.

So ordered.

and was therefore within the ambit of the Commission's regulatory power. The third party plaintiffs make no attempt to

show how here the Covenant Not to Sue falls in that category.