**WILSON P. ABRAHAM CONSTRUCTION CORPORATION, Plaintiff,**

v.

**TEXAS INDUSTRIES, INC. and Frank T. Dooley, Defendants.**

**TEXAS INDUSTRIES, INC., Third-Party Plaintiff-Appellant,**

v.

**RADCLIFF MATERIALS et al., Third-Party Defendants-Appellees,**

**Jahncke Service, Third Party Defendant.**

No. 78–1788.

United States Court of Appeals, Fifth Circuit.

Oct. 16, 1979.

Rehearing and Rehearing En Banc Denied Nov. 29, 1979.

898

Benjamin R. Slater, Jr., William J. Hamlin, New Orleans, La., for third-party plaintiff-appellant.

Stone, Pigman, Walther, Whittmann & Hutchinson, Stephen H. Kupperman, Ewell P. Walther, Jr., New Orleans, La., Lemle, Kelleher, Kohlmeyer & Matthews, Dando B. Cellini, New Orleans, La., Chaffe, McCall, Phillips, Toler & Sarpy, James A. Babst, New Orleans, La., for third-party defendants-appellees.

Bell, Boyd, Lloyd, Haddad & Burns by R. Clifford Potter, Chicago, Ill., for amicus curiae Boise Cascade Corp.

Mandell & Wright, Houston, Tx.; McGovern, Opperman & Paquin, Minneapolis, Mn.; Kohn, Millstein, & Cohen, Washington, D. C.; and Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., by Lowell E. Sachnoff, Chicago, Ill., for amici curiae plaintiffs in M.D.L. –310.

Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa.; Mills, Shirley, McMicken & Ecketl, Galveston, Tx.; Skadden, Arps, Slate, Meager & Flom, by Leslie H. Arps,

New York City, for *amici curiae* Georgia-Pacific Corp., Westvaco Corp., and Packaging Corp. of America.

Kirkland & Ellis, by John H. Morrison, Chicago, Ill., for *amici curiae* Weyerhaeuser Co., and by Hammond E. Chaffetz, Chicago, Ill., for *amici curiae* Willamette Industries, Inc.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

Texas Industries, Inc., the defendant in a civil antitrust action, appeals the dismissal of its third-party complaint impleading its alleged coconspirators and seeking contribution. The sole issue is whether a right of contribution is available to an antitrust defendant under the federal antitrust laws. We hold that there is no such right of contribution.

## I.

This action was instituted on September 8, 1975, by Wilson P. Abraham Construction Corp., not a party to this appeal, against Texas Industries, Inc.[1] for damages arising out of an alleged price-fixing scheme. Abraham's complaint asserts that Texas Industries and certain unnamed coconspirators engaged in an unlawful combination and conspiracy to raise and stabilize the price of ready-mix concrete in the New Orleans area in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[2] Abraham seeks to recover treble damages under 15 U.S.C. § 15.

Discovery instituted by Texas Industries revealed that the unnamed alleged coconspirators were Radcliff Materials, Inc., Jimco, Inc., and OKC Dredging, Inc. Texas Industries then filed a third-party complaint against these parties seeking contribution from them should it be found liable to Abraham in the main demand. The third-party defendants filed motions to dismiss the third-party complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted.

On October 4, 1977, the district court entered a Minute Entry granting the motions to dismiss the third-party complaint with prejudice on the ground that no right of contribution exists among antitrust coconspirators under federal law. Although persuaded by Texas Industries' arguments in favor of allowing contribution, the court deferred to what it considered the "weight of authority"[3] denying such a right to an antitrust defendant. On March 29, 1978, the court determined that there was no just reason for delay and directed that the Minute Entry be entered as a final judgment. Texas Industries appealed.

In their briefs and at oral argument the third-party defendants correctly asserted

---

1. A former employee of Texas Industries, Frank T. Dooley, was also named as a defendant but has never been served.

2. On January 26, 1973, a grand jury handed down criminal indictments charging Texas Industries and one of its employees, Radcliff Materials, Inc. and one of its employees, Jahncke Services, Inc. (later changed to OKC Dredging, Inc.) and one of its employees, and Jimco, Inc. with violations of 15 U.S.C. § 1. The indictments charged the existence of an unlawful combination and conspiracy in unreasonable restraint of interstate trade and, in particular, accused the defendants of entering into an agreement to raise and stabilize the price of ready-mix concrete in the New Orleans area. The criminal proceedings were ultimately concluded upon the entry of *nolo contendere* pleas by each of the defendants.

3. The court cited four cases as holding that there is no right to contribution among coconspirators in a federal antitrust case. *American Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1320 (3d Cir. 1975); *Walker Distrib. Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1 (9 Cir. 1963); *Sabre Shipping Corp. v. American President Lines, Ltd.*, 298 F.Supp. 1339 (S.D.N.Y. 1969); *Wainwright v. Kraftco Corp.*, 58 F.R.D. 9 (N.D.Ga.1973). However, only the decisions in *Sabre Shipping*, which confronted the issue of contribution, and *Kraftco*, which arguably implies a no-contribution rule, are in point. The decisions in *American Motor Inns* and *Walker Distributing* only state the general rule that an antitrust plaintiff need not sue all coconspirators but may choose to proceed against any one or combination of them.

that no federal court had ever recognized a right of contribution among antitrust co-conspirators. *See Olson Farms, Inc. v. Safeway Stores, Inc.,* [1977–2] Trade Reg. Rep. (CCH) ¶ 61,698 (D.Utah 1977), *argued and submitted,* No. 77–2068 (10 Cir. March 16, 1979); *El Camino Glass v. Sunglo Glass Co.,* [1977–1] Trade Reg.Rep. (CCH) ¶ 61,533 (N.D.Cal.1976); *Sabre Shipping Corp. v. American President Lines, Ltd.,* 298 F.Supp. 1339 (S.D.N.Y.1969).[4] Unfortunately for the third-party defendants, however, the most recent, and only appellate, court to specifically consider this issue abruptly jettisoned the limited precedent and adopted the very position previously rejected by the district courts. In *Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.,* 594 F.2d 1179 (8 Cir. 1979), an Eighth Circuit panel, with one judge dissenting, held that an antitrust defendant should, at least under certain circumstances, be enti-

tled to contribution from those "joint tort-feasors"[5] not sued by the plaintiff in the main demand. Although we have carefully considered the arguments set forth in the majority's opinion, we are unable to agree that a right of contribution should be allowed among violators of the antitrust laws.

### II.

■ There is no statutory right of contribution provided for under either the Sherman Act, 15 U.S.C. § 1 et seq., or the Clayton Act, 15 U.S.C. § 12 et seq. We do not, however, interpret this omission as evidence that Congress necessarily intended to deny contribution under the antitrust laws. *But see Sabre Shipping, supra,* 298 F.Supp. at 1345. It is more likely that this narrow question, although a matter of some importance, never occurred to the drafters of the legislation. Our task, therefore, is to guess what Congress "would have intended on a

4. *See also Goldlawr, Inc. v. Schubert,* 276 F.2d 614, 616 (3d Cir. 1960) (dictum); *Baughman v. Cooper Jarrett, Inc.,* 391 F.Supp. 671, 678 n. 3 (W.D.Pa.1975), *aff'd and modified on other grounds,* 530 F.2d 529 (3d Cir.), *cert. denied,* 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976) (dictum); *Gould v. American-Hawaiian S.S. Co.,* 387 F.Supp. 163 (D.Del.1974) (dictum); *Wainwright v. Kraftco Corp.,* 58 F.R.D. 9, 11–12 (N.D.Ga.1973) (arguably by implication); *Washington v. American Pipe & Constr. Co.,* 280 F.Supp. 802, 804–05 (S.D.Cal.1968) (arguably by implication). *But see Chevalier v. Baird Sav. Ass'n,* 72 F.R.D. 140, 145 n. 6 (E.D. Pa.1978) (dictum).

5. The case law has uniformly characterized a private antitrust suit as a tort action. *See, e. g., Solomon v. Houston Corrugated Box Co.,* 526 F.2d 389, 392 n. 4 (5 Cir. 1976); *Simpson v. Union Oil Co.,* 311 F.2d 764, 768 (9 Cir.), *rev'd on other grounds,* 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1963); *Williamson v. Columbia Gas & Electric Corp.,* 110 F.2d 15 (3d Cir. 1939), *cert. denied,* 310 U.S. 639, 60 S.Ct. 1087, 84 L.Ed. 1047 (1940); *Tondos v. Amateur Hockey Ass'n,* 438 F.Supp. 310, 315 (W.D.N.Y.1977); *Wolf Sales Co. v. Rudolph Wurlitzer Co.,* 105 F.Supp. 506 (Colo.1952).

One commentator, however, has questioned the assumption that private antitrust actions sound in tort or that antitrust violators are necessarily "tortfeasors." Note, *Contribution in Private Antitrust Suits,* 63 Cornell L.Rev. 682, 692–97 (1978). As that writer notes, a large percentage of antitrust actions do not involve activity considered tortious under the common law. Since the no-contribution rule

has traditionally applied only to joint tort-feasors, the writer suggests that the courts should carefully examine the nature of the particular antitrust violation to see what common law form of action most closely resembles the plaintiff's statutory claim. Because he concludes that price-fixing arrangements more closely resemble quasi-contract than tort, he apparently would award contribution in this case.

We cannot subscribe to this analysis. First, the focus of the antitrust laws is not so much on the defendant's unjust enrichment as on the injuries the plaintiff has suffered. In fact, the plaintiff's right to damages is totally independent of whether the defendant has profited at the plaintiff's expense. Thus, we cannot agree that price-fixing "more closely resembles quasi-contract than tort." Second, the anti-competitive activity which escaped liability at common law has, because of altered social and economic conditions, become unacceptable behavior in modern society. Indeed, conduct once non-tortious has become criminal under the antitrust statutes. It is difficult to believe that the law of torts, which has always been in constant flux, would not have eventually encompassed such conduct if legislation had not preempted the field. We believe that the same rationale justifying a no-contribution rule among "tortfeasors" applies to intentional antitrust violators. *See Corbett, Apportionment of Damages and Contribution Among Coconspirators in Antitrust Treble Damages Actions,* 31 Fordham L.Rev. 111, 114 (1962).

point not present to its mind, if the point had been present."[6] We agree with the case law that this issue must be resolved by reference to federal common law.[7]

Texas Industries advances a number of arguments for implication of a right of contribution. First, it argues that the deterrent effect of treble damages is dissipated by the possibility that only one of a number of conspirators would actually be liable for the injury. We conclude, consistent with prevailing economic theory,[8] however, that that very possibility of imposition of sole liability has an enhanced deterrent effect. The chance that a participant may be faced with a full judgment is more likely to discourage anticompetitive conduct than would ensuring that each participant pays only some fair share. Allowance of contribution in effect ensures that the burden upon a particular defendant would be ameliorated by a division of liability. *See Sabre Shipping Corp. v. American President Lines, Ltd.,* 298 F.Supp. 1339 (S.D.N.Y. 1969); *El Camino Glass v. Sunglo Glass Co.,* 1977–1 Trade Cases ¶ 61,533 (N.D.Cal.1976).

Even assuming, however, that the arguments concerning the relative deterrent effects are inconclusive, *see Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.,* 594 F.2d 1179 (8 Cir. 1979) (Hanson, J., dissenting in part), this inconclusiveness would hardly be a compelling reason upon which to base a rule allowing contribution. *Id.* at 1189.

Second, Texas Industries suggests that a rule prohibiting contribution would encourage collusion by the plaintiff with one or more of the potential defendants to the action. Similarly, the Eighth Circuit expressed concern that under a no-contribution rule a large or powerful wrongdoer would have sufficient economic influence to coerce a plaintiff into excluding it as a defendant. Although the possibility of collusion or coercion has always existed under a no-contribution rule, the courts and legislatures have not deemed this threat sufficient to counterbalance the advantages derived from denying contribution to wrongdoers. Texas Industries has not suggested that there has been collusion or coercion in

---

6. B. Cardozo, The Nature of the Judicial Process 15 (1949).

7. *Professional Beauty Supply, Inc., supra,* 594 F.2d at 1182; *El Camino Glass, supra* at 72, 111 n. 1; *Sabre Shipping Corp., supra,* 298 F.Supp. at 1343. *See generally Sola Electric Co. v. Jefferson Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165 (1942).

At common law no right of contribution existed among intentional tortfeasors. *Merryweather v. Nixan,* 8 Term.Rep. 186, 101 Eng. Rep. 1337 (K.B.1799). This no-contribution rule was subsequently extended to cases involving unintentional conduct, *see* W. Prosser, Law of Torts § 50 at 305–06 (4th ed. 1971), and was adopted by the federal common law, *Union Stockyards Co. v. Chicago, B. & Q. R. R.,* 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453 (1905). This rule, however, had been modified in some cases, at least among unintentional tortfeasors, *see, e. g., Kohr v. Allegheny Airlines, Inc.,* 504 F.2d 400 (7 Cir. 1974), *cert. denied,* 421 U.S. 978 (1975), and the Eighth Circuit has rejected the rule in its entirety in the antitrust context. *See Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.,* 594 F.2d 1179 (8 Cir. 1979). The *Professional Beauty Supply* court relied upon *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), as indicative of the erosion of the no-contribution rule. Even assuming

that *Cooper Stevedoring,* an admiralty case, is apposite, it would not be dispositive of the present case since the implication of a cause of action under the federal common law is a discrete inquiry focused upon the circumstances of a particular case.

8. Economists have argued that business managers, particularly in larger organizations, are generally "risk averse"—that is, they are deterred more by the slight prospect of a large loss than by the strong prospect of a small loss. If this hypothesis is correct, application of the rule denying contribution should inhibit those managers who are aware of the rule from participating in unlawful group activity: Although the rule decreases the likelihood that an individual participant will be held liable, it increases the size of the potential liability.

Note, *supra,* 63 Cornell L.Rev. at 702. The author of the note suggests that the participant's unfamiliarity with the no-contribution rule may limit its deterrent effect. We are convinced, however, that, as a class, antitrust defendants are more likely to be familiar with the no-contribution rule than tortfeasors in general. Furthermore, the percentage of participants unaware of the rule will certainly decrease as the rule is applied.

this case, and we are unwilling to assume that the plaintiff engaged in or yielded to these tactics. Should a defendant establish that it is the victim of such maneuvering, it may well have an independent cause of action, at least as against its coconspirators.

Third, Texas Industries contends that a rule denying contribution is inconsistent with the Supreme Court's rejection of *in pari delicto* as a defense to an antitrust action in *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 30 L.Ed.2d 982 (1968). Texas Industries reasons that if a participant in an unlawful scheme is not precluded from recovering treble damages from the other participants, no possible rationale can justify the denial of his right to seek contribution from his fellow wrongdoers.

As an initial matter, we are unable to agree with Texas Industries' assessment of the Court's decision in *Perma Life.* Notwithstanding the language in Justice Black's principal opinion,[9] the decision does not endorse a wholesale rejection of the *in pari delicto* doctrine in an antitrust treble damages action. First, the Court made clear that the culpable plaintiff in that case was economically less powerful than the defendant and was not in any meaningful sense a voluntary participant in the illegal scheme. *Id.* at 139, 88 S.Ct. 1981. Consequently, the Court had no opportunity to decide whether a plaintiff might, wholly apart from *in pari delicto*, be precluded from recovery because of his "complete involvement" in the illegal scheme. *Id.* at 140, 88 S.Ct. 1981.

More important, five members of the *Perma Life* court emphasized their belief that some aspects of the *in pari delicto* doctrine should be retained under the antitrust laws. *Id.* at 146, 88 S.Ct. 1981 (White, J., concurring) (plaintiff barred where he and defendant bear "substantially equal responsibility" for injury); *id.* at 147, 88 S.Ct. 1981, 1989 (Fortas, J., concurring in the result) (plaintiff barred where "the fault of the parties is reasonably within the same scale"); *id.* at 149, 88 S.Ct. at 1989 (Marshall, J., concurring in the result) (plaintiff barred where he "actively participated in the formation and implementation of an illegal scheme"); *id.* at 154, 88 S.Ct. 1981 (Harland, J., and Stewart, J., concurring in part and dissenting in part) (plaintiff barred who violated the law "in cooperation with defendant"). Subsequent lower court opinions have concluded that *Perma Life* refuses an *in pari delicto* defense only to those "plaintiffs who do not bear equal responsibility for creating and establishing an illegal scheme, or who are required by economic pressures to accept such an agreement." *Premier Electrical Constr. Co. v. Miller Davis Co.*, 422 F.2d 1132, 1138 (7 Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970). *See Bernstein v. Universal Pictures, Inc.*, 517 F.2d 976 (2d Cir. 1975); *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 15–16 (4 Cir. 1971); *see also Javeline Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 278–79 (9 Cir. 1976); *Dreibus v. Wilson*, 529 F.2d 170, 174 (9 Cir. 1975); ABA Antitrust Law Developments 297–99 (2d ed. 1975).[10]

Furthermore, the partial rejection of the *in pari delicto* defense in *Perma Life* does not require that we recognize a right of contribution among antitrust coconspirators. There is an obvious and fundamental difference between a rule that bars suit by a plaintiff who in any way participated in the antitrust violation and a rule that forbids a defendant from obtaining contribution from his fellow wrongdoers. A rule barring any culpable plaintiff diminishes the deterrent effect of the antitrust laws by reducing the pool of potential private attor-

---

**9.** We therefore hold that the doctrine of *in pari delicto*, with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action.

392 U.S. at 140, 88 S.Ct. at 1985.

**10.** In *Greene v. General Foods*, 517 F.2d 635, 646–47 (5 Cir. 1975), a panel of this court indicated that it "seriously question[ed]" the argument that *in pari delicto* retained vitality after *Perma Life.* That court, however, expressly did not rule on this point. *See also Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690 (5 Cir. 1975).

neys general who can instigate costly and uncertain antitrust litigation. However, as we previously noted, a rule prohibiting contribution among antitrust coconspirators not only does not frustrate deterrence but may very well enhance the statutes' deterrent effect by preventing a defendant from cutting its losses.[11]

Fourth, Texas Industries asserts that the denial of contribution in an antitrust context is inconsistent with the allowance of contribution under other federal statutes. A number of cases have recognized a right of contribution under certain provisions of the federal securities laws that do not expressly provide for such a right. *Gould v. American Hawaiian Steamship Co.*, 387 F.Supp. 163 (D.Del.1974), *vacated on other grounds*, 535 F.2d 761 (3d Cir. 1976); *Alexander & Baldwin, Inc. v. Peat, Marwick, Mitchell & Co.*, 385 F.Supp. 230 (S.D.N.Y. 1970), *aff'd per curiam*, 442 F.2d 1376 (2d Cir. 1971); *de Haas v. Empire Petroleum Co.*, 286 F.Supp. 809 (D.Colo.1968), *modified on other grounds*, 435 F.2d 1223 (10 Cir. 1970). As these cases have recognized, however, both the Securities Act of 1933 and the Exchange Act of 1934 make express statutory provision for contribution,[12] and the allowance of contribution in these cases can be explained under the general principle that the securities laws are to be administered *in pari materia. Globus, Inc. v. Law Research Service, Inc.*, 318 F.Supp. 955, 958 (S.D.N.Y.1970), *aff'd per curiam*, 442 F.2d 1376 (2d Cir. 1971); Fisher, *Contri-*

*bution in 10b–5 Actions*, 33 Bus.Lawyer 1821, 1826 (1973); Note, *supra*, 63 Cornell L.Rev. at 698 n. 85. Since there is no express provision for contribution under the antitrust laws, we are unable to use cases decided under the securities laws as authority for implying such a right in this case.

As further evidence of a judicial trend toward contribution in other areas of federal law, Texas Industries cites both FELA cases[13] and sex discrimination cases decided under the Civil Rights Act.[14] The FELA cases were negligence actions in which contribution was allowed on the basis of state law and, therefore, do not support Texas Industries' argument that a federal right of contribution should be extended to an antitrust defendant. The cases decided under the Civil Rights Act do not even discuss the rationales for allowing contribution. We decline to discard an established rule of law by relying on cases that offer no reasons.

Finally, Texas Industries proffers that denying contribution amounts to a taking of property without due process and equal protection of the laws as guaranteed by the Fifth Amendment. This constitutional violation is premised on the supposed unfairness which results when an antitrust defendant is forced to bear a disproportionate share of the damages caused by the conspiracy to which he was a party. Although we realize that the denial of contribution among wrongdoers, together with a plaintiff's right to sue and collect from only

---

11. In a contribution action there is necessarily an antitrust defendant who is faced with potential liability to an injured plaintiff; deterrence does not suffer if contribution is denied since a real threat of liability exists for all participants in the illegal scheme—any one of them could have been selected as the defendant in the plaintiff's action. On the other hand, a rule that bars suit by any plaintiff who participated in the wrong will, in many instances, mean that no defendant will face liability since there is no plaintiff willing to bring the action—a result that clearly undermines the deterrence objectives of the antitrust laws.

12. Section 11(f) of the 1933 Act, 15 U.S.C. § 77k(f), and §§ 9(e) and 18(b) of the 1934 Act, 15 U.S.C. §§ 78i(e), 78r(b).

13. *Chicago & N. W. Ry. v. Minnesota Transfer Ry.*, 371 F.2d 129 (8 Cir. 1967); *Zontelli Bros. v. Northern P. Ry.*, 263 F.2d 194 (8 Cir. 1959); *Blair v. Cleveland Twist Drill Co.*, 197 F.2d 842 (7 Cir. 1952); *Patterson v. Pennsylvania Ry.*, 197 F.2d 252 (2d Cir. 1952).

14. *Stevenson v. International Paper Co.*, 432 F.Supp. 390 (W.D.La.1977); *International Union of Electrical, Radio and Machine Workers v. Westinghouse Electric Corp.*, 73 F.R.D. 57 (W.D.N.Y.1976); *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78 (S.D.N.Y.1973); *Gilbert v. General Electric Corp.*, 59 F.R.D. 267 (E.D.Va.1973).

one defendant,[15] can saddle a defendant with a substantial financial burden, we do not think the imposition of this burden offends constitutional principles.

■ The Fifth Amendment commands that the federal government refrain from depriving a person of his property "without due process of law." Due process has both a procedural and a substantive aspect. Procedural due process ensures the observance of certain procedural safeguards designed to afford protection against arbitrary governmental deprivation. Under this analysis, property may not be taken without providing the minimal protections of notice and an opportunity to be heard. Texas Industries does not, and cannot, claim a procedural due process infringement. The judicial proceeding required before the treble damages penalty can be imposed goes far beyond the threshold requirement of procedural due process.

Substantive due process requires that all legislation be rationally related to the furtherance of a legitimate governmental objective. Since the close of "the Lochner era"[16] in the late 1930's judicial scrutiny of economic or social legislation has been virtually nonexistent. Instead, especially in the realm of economic regulation, the courts have exhibited great deference to legislative judgment and have upheld legislation if there is any rational basis for enacting a particular economic measure. See, e. g., United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Indeed, the courts have even been willing to hypothesize legislative objectives and possible reasons for the law's enactment. See, e. g., Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ Texas Industries' substantive due process argument cannot survive in such a harsh climate. We have no difficulty in concluding that a rule denying contribution to antitrust coconspirators comports with the "mere rationality" test utilized by the courts to scrutinize economic legislation. Although denying contribution may create a more severe penalty under the treble damages provision of the antitrust laws than exists at common law, the powerful deterrent effect provided by such a penalty is certainly a rational basis for a no-contribution rule.

■ Texas Industries' equal protection argument is equally unacceptable. The equal protection guarantee of the Fifth Amendment's due process clause[17] requires that all governmental classifications rationally relate to a legitimate governmental purpose. The essence of the requirement is that the government treat all those similarly situated similarly. See Tussman & ten-Broech, The Equal Protection of the Laws, 37 Calif.L.Rev. 341 (1949). In applying the

15. Antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy to which they were a party. Solomon v. Houston Corrugated Box Co., 526 F.2d 389, 392 n.4 (5 Cir. 1976); Wainwright v. Kraftco, 58 F.R.D. 9, 11–12 (N.D.Ga.1973); Washington v. American Pipe & Constr. Co., 289 F.Supp. 802, 804 (S.D.Cal.1968). A private plaintiff need not sue all coconspirators but may choose to proceed against any one or more of them. Hennessey v. National Collegiate Athletic Ass'n, 564 F.2d 1136 (5 Cir. 1977); American Motor Inns, Inc. v. Holiday Homes, Inc., 521 F.2d 1230 (3d Cir. 1975); Walker Distrib. Co. v. Lucky Lager Brewing Co., 323 F.2d 1 (9 Cir. 1963).

16. This phrase takes its name from the Supreme Court's opinion in Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), and refers to the period between 1897 and 1937 when the Court invalidated must state and federal legislation on substantive due process grounds. See L. Tribe, American Constitutional Law §§ 8–2 to 8–7 (1978); J. Nowak, R. Rotunda, & J. Young, Constitutional Law 397–410 (1978).

17. Although the Fifth Amendment does not contain an equal protection clause, the protections guaranteed under that concept have, to a large degree, been implied under the amendment's due process clause. See Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). ("This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment."); Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1954); Shapiro v. Thompson, 394 U.S. 618, 641–42, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

equal protection rationality requirement, the courts have utilized various standards of review depending on the type of legislation being scrutinized. In reviewing economic regulation the courts have exhibited the same deference to legislative judgment accorded under a due process analysis. The test generally applied in such cases is whether there is any "conceivable basis" justifying the governmental classification.[18] Under this analysis, denying contribution does not deprive Texas Industries of equal protection of the law. The purpose of the antitrust laws is to preserve and promote the public interest in competition by ensuring the existence of an open and free market. We cannot say that a no-contribution rule, because of its deterrent effect, is not rationally related to the achievement of this purpose.

### III.

■ Throughout this opinion we have treated all antitrust defendants as equally culpable, and, therefore, equally undeserving of contribution. An argument could be made, however, that a distinction should be drawn between intentional and unintentional violators. The crux of this argument rests upon the conclusion that an antitrust defendant whose liability is premised solely upon the illegal effects of its actions should not be treated as harshly as a defendant whose culpability arises from a determination of an illegal purpose. Even assuming that inequity may occur in a particular case, however, we believe that creating a contribution right for an unintentional violator may inimically affect the implementation of the antitrust laws. The possible detriments that can be envisioned make this an inappropriate case for the exercise of our power to shape the federal common law even to this limited extent.

First, allowing a right of contribution for an unintentional violator may diminish the deterrent function of trebled damages. As an initial matter, deterrence in reference to

an unwitting price-fixer may appear to be irrelevant. We believe it reasonable to assume, however, that even businesses of the purest motives necessarily steer wide of any conduct the effects of which may violate the law, in the knowledge that full, trebled damages possibly await even an unintentional transgression. Allowing contribution may diminish this prophylactic, chilling effect by reducing the threatening specter of sole liability. Businesses may be encouraged to risk anticompetitive conduct secure in the knowledge that proof of illegal purpose is often impossible and that liability for illegal effects will be dissipated.

Second, the overall effects upon plaintiff's case of allowing contribution even for an unintentional violation are problematic. In *Professional Beauty Supply, Inc. v. National Beauty Supply, Inc.*, 594 F.2d 1179 (8 Cir. 1979), the court, in allowing contribution for all antitrust defendants, dismissed this concern by pointing out that district courts have considerable discretion in managing complex cases to diminish any adverse effects upon plaintiffs. However, as Judge Hanson, a district judge sitting by designation, noted in his partial dissent, private plaintiffs may derive cold comfort from "the mere possibility of the favorable uses of district court discretion." *Id.* at 1190.

> Aware that litigation may spiral out of their control, it is foreseeable that some plaintiffs will decide to forego a legitimate cause of action. Though district courts have the power to superintend complex litigation, the multiplication of issues and parties remains to be grappled with, and the chilling effect on the incentive to bring or pursue a lawsuit is unlikely to be diminished by the mere possibility of the favorable uses of district court discretion.

*Id.* at 1190. (Hanson, Jr., dissenting in part).

Similarly, a district judge in this circuit has rejected implication of third-party

---

**18.** *See, e. g., McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); L. Tribe, *supra* § 16–3.

claims based upon his determination that such claim would be unmanageable. *See In re Corrugated Container Antitrust Litigation*, —— F.Supp. —— (S.D.Tex.1979). These concerns expressed by district judges buttress our conclusion that allowance of third-party claims may open a Pandora's box of procedural problems, against which district court discretion may prove a palliation.

Third, there appears to be no reason for drawing a distinction between intentional and unintentional violators other than to ensure equity in a particular case. There may well be antitrust violators who are entirely unwitting, but we refuse to distort the antitrust laws in order to remedy a problematic inequity. Moreover, any contribution may well amount to a windfall of sorts for a defendant because of the fortuity of plaintiff's proof.

### IV.

Our decision in this case is certainly subject to reasonable contrary arguments. In this area of interstitial lawmaking, however, to forge a new rule with questionable benefits and such possible detriments is a bad practice. Those aggrieved by this decision always have recourse to Congress, a forum better suited to evaluation of the competing interests and policies involved. In the absence of more compelling arguments in favor of contribution, this court is reluctant to create such a right as a matter of federal common law.

Affirmed.

1. Although intent is a necessary element of a criminal antitrust offense, a defendant may incur *civil* liability for an unintentional violation of the antitrust laws. *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854, 869 n.13 (1978). There is nothing new in this principle, for the courts have long recognized that "the *per se* rule against price fixing applies to any arrangement among competitors which, *in purpose or effect*, directly or indirectly inhibits price competition." L. Sullivan, Antitrust § 74 at 198 (1977) (emphasis added).

LEWIS R. MORGAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion insofar as it denies a right of contribution to defendants who have intentionally violated the antitrust laws. I dissent, however, from the determination that an unintentional violator [1] should be absolutely barred from seeking contribution from his fellow wrongdoers.

Historically, no right of contribution has been available among intentional tortfeasors. The courts have reasoned that limited judicial resources should not be wasted on a party whose cause of action is founded upon his own deliberate wrong. Restatement (Second) of Torts § 836A, Comment a (1979); Restatement of Restitution, Introductory Note to Ch. 3, Title C at 386 (1937). As noted in the majority opinion, Texas Industries has offered no convincing reason for departing from the common law no-contribution rule in the context of an intentional violation of the antitrust laws. What the majority fails to note is the modern trend toward recognizing a right of contribution among unintentional tortfeasors. Three fourths of the American jurisdictions [2] now agree with Dean Prosser's observation that

> [t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone.

Prosser, Law of Torts § 50 at 307. Absent proof that the purposes of the antitrust laws would be frustrated under a limited contribution rule, I would, in the interest of fairness, award contribution to a defendant

2. Note, Contribution in Private Antitrust Suits, 63 Cornell L.Rev. 682, 698 (1978). A number of courts have allowed contribution among unintentional wrongdoers under federal common law. See, e. g., *Kohr v. Allegheny Airlines*, 504 F.2d 400 (7th Cir. 1974), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975); *Gomes v. Broadhurst*, 394 F.2d 465 (3rd Cir. 1967); *Knell v. Feltman*, 85 U.S.App.D.C. 174, 174 F.2d 662 (1949). The Restatement (Second) of Torts § 886A (1979) recognizes a right of contribution among unintentional tortfeasors.

whose liability is based solely on an unintentional violation of the antitrust laws.

The majority suggests that awarding contribution to unintentional violators could undermine the antitrust law's effectiveness in discouraging anticompetitive behavior. According to the court's analysis, two problems arise even under a limited contribution rule: (1) the deterrent effect of the private damage action may be diminished if defendants are allowed to distribute the financial burden of a treble damages judgment and (2) the lawsuit will be made more complex and difficult to manage, thereby dissuading plaintiffs from bringing such actions. Neither argument is persuasive.

The deterrence argument has been relied on by courts as a reason both for denying and for awarding contribution in an antitrust case. *Compare El Camino Glass v. Sunglo Glass Co. with Professional Beauty Supply, Inc.*, 594 F.2d 1179 (8th Cir. 1979). The majority opinion favors the position adopted by the district court in *El Camino Glass* that denying contribution *enhances* the deterrent effect of the antitrust laws by preventing defendants from distributing the financial burden of a treble damages judgment. However, as the *Professional Beauty Supply* court noted, the argument can also be made that denying contribution *diminishes* the law's deterrent effect by allowing some participants to avoid all responsibility for their wrongdoing. I agree with Judge Hanson's assessment that the arguments on either side of the deterrence question are at best inconclusive. *Professional Beauty Supply, Inc., supra*, 594 F.2d at 1189 (Hanson, J., dissenting in part). The deterrence argument, therefore, is an inadequate reason for rejecting a rule designed to achieve fairness among parties guilty of no conscious wrongdoing.

Furthermore, even if one accepts the premise that a no-contribution rule has an increased deterrent effect on those contemplating anticompetitive activity, this is no reason for denying contribution to unintentional violators. As Assistant Attorney General Shenefield recently observed in testimony before a Senate subcommittee considering a proposed bill allowing contribution in price-fixing cases,[3] "[c]ontribution is most compelling where the tortious conduct is unintentional; *in such situations a lack of contribution would have no deterrent effect.*"[4] This position makes more sense than the court's conclusion that businesses will somehow "steer wide" of illegal activity which they never realized was illegal in the first place. Clearly, deterrence is a valid reason for denying contribution only among those who *intentionally* violate the antitrust laws.

The court is also concerned that some businesses "may be encouraged to risk anticompetitive conduct secure in the knowledge that proof of illegal purpose is often impossible and that liability for illegal effects will be dissipated." Majority opinion at 905. The assumption that intentional violators will be able to pass themselves off as unwitting transgressors is inconsistent with the realities of the proposed contribution action. Any party seeking contribution will invariably be opposed by contribution defendants who have a vested interest in establishing that the contribution plaintiff was an intentional violator of the antitrust laws. Moreover, these contribution defendants, unlike many antitrust plaintiffs, will be in an excellent position to know whether the party was, in fact, an intentional wrongdoer. Under these circumstances few, if any, intentional tortfeasors will succeed in presenting themselves as unwitting transgressors.

In its second argument the court expresses concern that allowing contribution will

---

3. S. 1468, 96th Cong., 1st Sess. (July 9, 1979).

4. Testimony of Assistant Attorney General John Shenefield before Senate Subcommittee on Antitrust, Monopoly and Business Rights, June 8, 1979. Other writers agree that "denying contribution can consistently deter only willful lawbreakers; it will not inhibit many violations committed unintentionally or in response to economic coercion. Thus, the deterrence rationale provides at best a weak justification for blanket denial of contribution." Note, *supra*, 63 Cornell L.Rev. at 702–03; Restatement of Restitution, *supra*, at 386.

make the lawsuit more complex and difficult to manage, thereby dissuading some plaintiffs from pursuing a legitimate cause of action. Although the authorities considering the question unanimously agree that permitting contribution does threaten the plaintiff's ability to control the size and scope of his lawsuit,[5] they disagree as to the trial court's ability to recognize and eliminate that threat. It is clear the Fed.R. Civ.P. 42(b) authorizes trial judges to order separate trials whenever a plaintiff is inconvenienced or prejudiced by a defendant's expansion of his suit. Relying on language from Judge Hanson's dissent in *Professional Beauty Supply*, the majority warns that the discretionary nature of the separation remedy may nevertheless dampen some plaintiff's enthusiasm about initiating an antitrust action.

I simply cannot believe that the discretionary nature of the Rule 42(b) separate trials provision would discourage an antitrust plaintiff from seeking treble damages should the court recognize a right of contribution among unintentional violators. The district courts are certainly aware of the antitrust plaintiff's status as a private attorney general and of the important role played by the private damage action in enforcing the objectives of the antitrust laws. The special solicitude accorded these plaintiffs necessarily requires a liberal exercise of the separate trials provision. Realizing his favored position, the antitrust plaintiff is not likely to assume that the trial judge would deny separation and allow defendant to complicate the lawsuit or otherwise add to the private litigant's burden. Hence, the incentive to sue provided by the treble damages action is not jeopardized if contribution is allowed.

Although some unfairness to unintentional violators must be tolerated if antitrust law policy is thwarted by allowing contribution, I do not believe that the dangers envisioned by the majority withstand close scrutiny. Absent more convincing proof that a limited contribution rule would compromise the effectiveness of the antitrust laws, I would not force a defendant guilty of no conscious wrongdoing to bear total responsibility for the sins of many.

---

5. *Professional Beauty Supply, supra*, 594 F.2d 1184; *id* at 1190 (Hanson, J., dissenting in part); *El Camino Glass, supra* at 72,112; *Sabre Shipping Corp. v. American President Lines,* *Ltd.*, 298 F.Supp. 1339, 1346 (S.D.N.Y.1969); Note, Contribution in Private Antitrust Suits, 63 Cornell L.Rev. 682, 700–01 (1978).