649 F.2d 1370
 1979-2 Trade Cases 62,995
 OLSON FARMS, INC., Plaintiff-Appellant,
v.
SAFEWAY STORES, INCORPORATED; Countryside Farms, Inc.; Gusto
Marketing Systems, Inc.; Egg Products Company; and
Snow White Egg Company, Defendants-Appellees.
 No. 77-2068.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 16, 1979.
Decided Nov. 8, 1979.
Petition for Rehearing and Rehearing En Banc June 30, 1981.
 
 Harold G. Christensen, Salt Lake City, Utah (Michael R. Carlston, Dee Benson, Snow, Christensen & Martineau, Salt Lake City, Utah, on brief), for plaintiff-appellant.
 C. Douglas Floyd, San Francisco, Cal. (Richard W. Odgers, Vaughn R. Walker, Pillsbury, Madison & Sutro, San Francisco, Calif., and George L. Nelson, Donn E. Cassity, Romney, Nelson & Cassity, Salt Lake City, Utah, on the brief), for defendant-appellee Safeway Stores, Inc.
 Robert W. Brandt, Nelson, Harding, Richards, Leonard & Tate, Salt Lake City, Utah, on the brief for defendant-appellee Snow White Egg Co.
 Ricardo B. Ferrari, Salt Lake City, Utah, for defendants-appellees Countrywide Farms, Inc., Gusto Marketing Systems, Inc., and Egg Products Co.
 Before HOLLOWAY and McWILLIAMS, Circuit Judges, and MILLER,* judge.
 MILLER, Judge.
 
 
 1
 This appeal is from an order of the district court for the District of Utah dismissing the complaint of Olson Farms, Inc. ("Olson Farms"), a Delaware corporation,[1] on motion of defendants-appellees. Olson Farms filed its complaint on March 12, 1975. As amended, the complaint states that the claim "arises under the laws of the United States and arises out of Acts of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." It seeks a declaratory judgment that Olson Farms is entitled to contribution or, in the alternative, indemnity from defendants-appellees[2] with respect to a judgment against it on a jury verdict in an antitrust suit in the district court for the District of Utah. The suit was by fourteen egg producers against Olson Farms and Oakdell Egg Farms, Inc. The judgment amounted $1,950,827.23, representing damages of $574,593, trebled (15 U.S.C. § 15), plus attorneys' fees and costs,[3] and ran against Olson Farms only, injunctive relief being granted against Oakdell Egg Farms, Inc. The egg producers' claims were for the difference between what they were actually paid for their eggs and what they would have been paid but for a price fixing conspiracy in violation of section 1 of the Sherman Act and a conspiracy to violate section 2 of that Act (monopoly) in the distribution of shell eggs in Utah and Franklin County, Idaho. 15 U.S.C. §§ 1 and 2.[4] Olson Farms' complaint also states that the egg producers had claimed sales and damages as follows:
 
 
 2
 In its complaint, Olson Farms contends that, without contribution or indemnity, defendants-appellees (its alleged coconspirators) would be unjustly enriched by the amount of the antitrust judgment against Olson Farms attributable to the eggs bought by defendants-appellees.
 
 
 3
 Defendants-appellees moved to dismiss the complaint for failure to state a claim upon which relief could be granted. In opposition, Olson Farms argued, inter alia, that: (a) it had purchased eggs from only three of the fourteen plaintiffs; (b) it had purchased only eleven percent of the total eggs sold by the plaintiffs during the damages period, which covered years prior to 1972; and (c) most if not all of the remaining eighty-nine percent was purchased by defendants-appellees. By order dated October 21, 1977, the district court granted the motion to dismiss, holding that Olson Farms had stated no valid claim for contribution or indemnity under either federal or state law[5] and that the claim of unjust enrichment was but an expression of the claim for contribution or indemnity. It said:
 
 
 4
 The court is of the opinion that under the circumstances of this case the availability of indemnity or contribution to the plaintiff for alleged violation of antitrust laws is governed exclusively by the Federal antitrust laws and that said laws afford no such remedy. The court is further of the opinion that no actionable claim for indemnity has been alleged in the complaint. In any event, the requirements for a cause of indemnification are not found in the circumstances of this case.
 
 Contribution
 
 5
 Neither the Sherman Act nor the Clayton Act provides for a right of an adjudicated antitrust conspirator to contribution from his coconspirators. Nor does such a right exist under Federal common law. Thus, in Union Stock Yards Co. v. Chicago, Burlington & Quincy Railroad Co., 196 U.S. 217, 224, 25 S.Ct. 226, 227, 49 L.Ed. 453 (1905), a suit involving negligent tortfeasors, the Supreme Court declared:
 
 
 6
 (T)he general principle of law is well settled that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done.
 
 
 7
 And again, in Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 285, 72 S.Ct. 277, 279, 96 L.Ed. 318 (1952), the Court, noting that the admiralty rule of contribution is an exception to the general common law rule and citing the Union Stock Yards Co. case, stated:
 
 
 8
 In the absence of legislation, courts exercising a common-law jurisdiction have generally held that they cannot on their own initiative create an enforceable right of contribution as between joint tortfeasors.
 
 
 9
 This court, too, has recognized that "(t)he general rule is that, in the absence of express contract, there is no contribution between joint tort-feasors." Security Insurance Co. of New Haven v. Johnson, 276 F.2d 182, 185 (10th Cir. 1960).[6] See also Goldlawr, Inc. v. Shubert, 276 F.2d 614, 616-17 (3d Cir. 1960); Sabre Shipping Corp. v. American President Lines, 298 F.Supp. 1339 (S.D.N.Y.1969).
 
 
 10
 With one exception,[7] the cases cited by appellant for an exception to the general rule have not involved violation of the antitrust laws. For example, appellant relies upon Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir. 1974), cert. denied, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975), where the court adopted the position of the small number of states that have judicially recognized a right to contribution in favor of an unintentional tortfeasor. As an intentional violator of the antitrust laws,[8] appellant can take no comfort from that case. In that respect, the words of the court in Sabre Shipping Corp. v. American President Lines, supra at 1346, are pertinent:
 
 
 11
 If the Supreme Court (in the Union Stock Yards and Halcyon Lines cases) was reluctant to depart from the rule as between unintentional tortfeasors, how presumptuous it would be for this Court to do so for the benefit of intentional wrongdoers, whose acts are so severely castigated by Congress, to the point of providing criminal sanctions including imprisonment.
 
 
 12
 Olson Farms argues that there was no showing in the Cackling Acres case that its misconduct was "active" and, rather, that its misconduct was passive, apparently on the basis that it did not organize the conspiracies but joined them after they were under way. The Supreme Court has answered this in United States v. Paramount Pictures, 334 U.S. 131, 161, 68 S.Ct. 915, 931, 92 L.Ed. 1260 (1948):
 
 
 13
 For acquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one.
 
 
 14
 Olson Farms also argues that cases arising under the federal securities laws "offer a compelling analogy" in support of contribution in antitrust actions. Recognizing that certain sections of those laws expressly provide for contribution, appellant relies, inter alia, on cases indicating that contribution was allowable notwithstanding that the involved (antifraud) section did not expressly provide for contribution. Alexander v. Baldwin, Inc. v. Peat, Marwick, Mitchell & Co., 385 F.Supp. 230 (S.D.N.Y.1974); Getter v. R. G. Dickinson & Co., 366 F.Supp. 559, 569 (S.D.Ia.1973); deHaas v. Empire Petroleum Co., 286 F.Supp. 809 (D.Colo.1968), modified, 435 F.2d 1223 (10th Cir. 1970). However, the "analogy" provided by such cases falters on the fact that Congress expressly provided for contribution within the framework of the securities laws and, thus, established a policy that contribution is, at least, consistent with observance and enforcement of the securities laws; whereas, the fact that Congress made no mention of contribution whatsoever in the antitrust laws and expressed no intent thereon in the legislative history of those laws (or in subsequent amendments thereto), although it expressly legislated contribution in the securities laws, suggests that contribution in cases arising under the antitrust laws was not intended at least where contribution might predictably tend to frustrate observance and enforcement of the antitrust laws.
 
 
 15
 Olson Farms' reliance on Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), in which the Supreme Court held that the doctrine of in pari delicto is not to be recognized as a defense to a private antitrust action for treble damages by one coconspirator against another coconspirator, is misplaced. There the Court said, supra at 139, 88 S.Ct. at 1984:
 
 
 16
 (T)he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws. The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition.
 
 
 17
 There has been no linkage by the Supreme Court or by the Congress between "overriding public policy in favor of competition" and a right of contribution by one coconspirator against another coconspirator; and, as discussed infra, the existence of such linkage is doubtful at best.
 
 
 18
 Olson Farms especially relies on the recent holding of the Eighth Circuit[9] that
 
 
 19
 contribution may be enforced against joint tortfeasors in an antitrust action. Because of the deterrent policy of the antitrust laws, even intentional tortfeasors may obtain contribution so that (other) tortfeasors will not escape liability.
 
 
 20
 Professional Beauty Supply, Inc. v. National Beauty Supply, Inc. v. La Maur, supra at 1186. In that case, National Beauty Supply, Inc. ("National") filed, with the district court's permission, a third-party complaint against La Maur for contribution to the extent of at least one-half of any recovery against it by Professional Beauty Supply, Inc. ("Professional"), for violation of either federal or state (Minnesota) antitrust laws.[10] National alleged that "La Maur solicited National to become a distributor of La Maur's products in the State of Minnesota," and that "National had no responsibility for, or control over, La Maur's decision to terminate Professional."[11] It also alleged that La Maur had a duty, which it failed to perform, to reveal to National the nature and extent of all business relationships between La Maur and others which might be unlawfully interfered with if National were granted an exclusive dealership. The district court granted La Maur's motion to dismiss National's third-party complaint for failure to state a claim upon which relief could be granted. Hence the appeal.
 
 
 21
 In reversing the district court, the two-judge majority stated its rationale as follows (594 F.2d at 1185-86):[12]
 
 
 22
 There is an obvious lack of sense and justice in a rule which permits the entire burden of restitution of a loss for which two parties are responsible to be placed upon one alone because of the plaintiff's whim or spite, or his collusion with the other wrongdoer.
 
 
 23
 It further supported its holding with the following points:
 
 
 24
 The presence of contribution provisions in the securities laws is some indication that, if the question were presented today, Congress would include a right to contribution as part of the antitrust laws.
 
 
 25
 The trend among the states has been to allow contribution. A minimum of 23 states have enacted statutes which permit at least limited contribution, and 6 other states are generally cited as having case law which recognizes the right to contribution where there was no intentional misconduct.
 
 
 26
 The fear that allowing contribution will interfere with the plaintiff's ability to maintain control of his lawsuit (a defendant may attempt to complicate the issues and confuse the jury by impleading numerous third-party defendants or fundamentally alter the lawsuit by impleading a third-party defendant with financial resources far superior to the plaintiff or the original defendant) is legitimate and serious, but "such problems can be avoided by the district court's prudent use of its power to sever where necessary to insure justice." (Professional did not object to adding La Maur as a third-party defendant.)
 
 
 27
 A holding permitting contribution need not undermine the judicial policy in favor of settlement, and, in the proper case, the court should be able to fashion a rule of contribution which will protect the rights of settling defendants, citing Zenith Radio Corp. v. Hazeltine Research, Inc., supra (401 U.S.) at 348, (91 S.Ct. 795,) which held that a plaintiff could not recover for the same damages from each of two defendants. (The problem of how to treat a joint tortfeasor who has settled in good faith is not present in this case.)
 
 
 28
 District courts have the ability to sever issues and parties if the issue of contribution among defendants threatens to further complicate already enormously complex antitrust cases.
 
 
 29
 On balance, a rule allowing contribution is a greater deterrent then a rule that does not permit defendants to redistribute the cost of an antitrust action, thus enabling other joint tortfeasors to go "scot free." The possibility of escaping all liability might cause many to be more willing, rather than less willing, to engage in wrongful activity. Moreover, a rule allowing contribution would preclude a large or powerful tortfeasor from arranging with a plaintiff to exclude it as a defendant.
 
 
 30
 The majority opinion observed, 594 F.2d at 1186, that the decision of whether a particular party is entitled to contribution "is best left to the trier of fact upon consideration of all of the circumstances of a case, including the factors specified by Justice White in his concurring opinion in Perma Life Mufflers, Inc. v. International Parts Corp., supra (392 U.S. at 142, 88 S.Ct. 1981)." (Footnote omitted.) The factors (in the context of a treble damage suit by one coconspirator against another coconspirator) are: the relative responsibility for originating, negotiating, and implementing the scheme; who might reasonably have been expected to benefit from the illegal activity; whether one party attempted to terminate the arrangement and encountered resistance or countermeasures from the other party; who ultimately profited or suffered from the arrangement.
 
 
 31
 The dissenting opinion by Judge Hanson well states the points against allowing contribution:
 
 
 32
 The likelihood that a participant in a conspiracy to violate the antitrust laws may escape responsibility is at best a speculative concern (particularly in nonclass actions) since, in any given case, there may be any number of other potential plaintiffs damaged by the particular restraint of trade or monopoly who will act against that participant.
 
 
 33
 The question of deterrence "cuts both ways" (as the majority candidly observes), and it may well be that potential antitrust violators would be more likely to refrain from anticompetitive activities if they knew that any injured party could impose the full burden of treble damage recovery on any one of them even though he played only a relatively minor part in the conspiracy.
 
 
 34
 The possibility of dissipating the impact of a treble damage award among antitrust coconspirators may actually encourage anticompetitive activity.
 
 
 35
 A rule giving a right to contribution would present a substantial risk that antitrust laws will become more difficult for trial courts to manage. (In re Corrugated Container Antitrust Litigation, (84 F.R.D. 40), Memo Op., M.D.L. 310 (S.D.Tex. May 30, 1979.) The potential for confusion, delay, and complexity inherent in permitting antitrust defendants to implead other alleged violators (who may distort the litigation because of their size, nature of involvement, or position in the marketplace) would deter private plaintiffs of relatively limited means from bringing or maintaining a meritorious suit. Although district courts have the power to superintend complex litigation, the multiplication of issues and parties must, nevertheless, be dealt with. The chilling effect on the incentive to bring or pursue a lawsuit is unlikely to be diminished by the mere possibility of the favorable uses of district court discretion. See Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).
 
 
 36
 Thus, it can be seen that there are strong, offsetting arguments over the contribution issue. We regard as mere speculation the forecast that, if the question were presented, Congress would include a right to contribution as part of the antitrust laws.[13] It is noted that the Antitrust Improvements Act of 1976 (Pub.L.No.95-435, 90 Stat. 1383), which authorizes any attorney general of a State to bring a civil action in the name of the State, as parens patriae on behalf of natural persons residing in such State, requires the court to exclude from the amount of monetary relief awarded duplicative amounts awarded for the same injury. Such action falls far short of indicating a Congressional purpose to (1) provide for contribution in private antitrust suits, and (2) promulgate guidelines needed to implement such a policy covering such difficult matters as: the type of conduct for which rights of contribution will be allowed (negligent, intentional, criminal, and categories of violation); calculation of contribution shares (equal share, pro rata share, comparative liability, or comparative benefit); effect of settlements (whether to deduct only the amount of a settlement from the remaining damages to be collected from nonsettling defendants or the greater of such amount or what the defendant would have owed in contribution had he not settled); procedures for claiming contribution (cross-claims, counterclaims, separate actions, impleader possibly as to defendants who have settled).[14]
 
 
 37
 Before entering such a complex policy thicket, but recognizing a possible exception in the case of an unintentional violator,[15] we believe this court should await a clear signal, at least, from the legislative branch of our government on the matter. Certainly, the Congress, assisted by the resources of the executive branch, is in a far superior and more appropriate position to gauge the impact on observance and enforcement of the antitrust laws from contribution and its various facets of implementation. In this regard, we consider it salutary that the overwhelming majority of states in which a right of contribution exists among joint tortfeasors have provided for such a right by statute.[16]
 
 
 38
 Similar views were recently expressed by the Fifth Circuit in affirming the district court's dismissal of a third-party complaint (impleading alleged coconspirators and seeking contribution) of the defendant in a civil antitrust case. Wilson P. Abraham Construction Corp. v. Texas Industries, Inc., and Texas Industries, Inc. v. Radcliff Materials et al., 604 F.2d 897 (5th Cir. 1979).
 
 
 39
 In view of the foregoing, we hold that the district court correctly decided that Olson Farms' complaint did not state a cause of action based on a theory of contribution.
 
 Indemnity
 
 40
 Olson Farms' alternate demand for indemnity appears to confuse indemnity with contribution. Its amended complaint does not demand from defendants-appellees the full amount of the judgment paid by it only "the amount of the judgment" attributable to the eggs bought by each of its alleged coconspirators;[17] whereas, unlike contribution, indemnity "enforces a duty on the primary or principal wrongdoer to respond for all the damages." (Emphasis added.) Thomas v. Malco Refineries, Inc., 214 F.2d 884, 885 (10th Cir. 1954); accord, United Air Lines v. Wiener, 335 F.2d 379, 398 (9th Cir.), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964). Moreover, as an intentional wrongdoer, Olson Farms is not eligible to recover indemnity. As this court said in Security Insurance Co. of New Haven v. Johnson, 276 F.2d 182, 185 (10th Cir. 1960):
 
 
 41
 The general rule is that, in the absence of express contract, there is no contribution between joint tort-feasors. But where they are not in pari delicto, and their negligence is substantially different not merely in degree but in character, it is generally recognized that indemnity may be awarded.
 
 
 42
 Accord, United States v. Acord, 209 F.2d 709 (10th Cir.), cert. denied, 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115 (1954). The rule was exemplified in Thomas v. Malco Refineries, supra at 886:
 
 
 43
 In cases where the wrongful act or omission of a person causes injuries to another, and a second person, guilty only of imputed or constructive wrong, because of his legal relationship to the primary wrongdoer or his positive legal duty to the person injured, is also liable to the latter for the damages suffered, and such second person has discharged such liability, he is entitled to indemnity from the primary wrongdoer for the entire amount paid to discharge such liability. (Footnote omitted.)
 
 
 44
 In the context of a suit by a corporation against three of its employees for indemnity for criminal penalties and civil damages paid by it in an antitrust suit, this court said:
 
 
 45
 The public policy against allowing a claim premised upon the wrongful conduct of the claimant is of ancient origin, akin to the "unclean hands doctrine" in equity. . . . Stated generally, the rule is that "where the plaintiff's conduct in connection with the transaction upon which his claim is based was illegal and criminal the courts will deny him relief." . . . (Falconi v. F.D.I.C., 257 F.2d 287, 291 (3d Cir. 1958).) It is apparent that the principle can have no application in the case at bar. Here the criminal liability of the corporation is purely vicarious. It results solely from the activity of the corporate employees. To allow those employees to assert that their own unlawful conduct operates to defeat the right of their corporation to recover for the injury caused by that same conduct, is an exercise in circuitous reasoning. See Restatement (Second), Agency § 401, comment d (1958).
 
 
 46
 Wilshire Oil Co. of Texas v. Riffe, 409 F.2d 1277, 1283 (10th Cir. 1969).
 
 
 47
 Olson Farms premises its claim for indemnity on a theory of unjust enrichment, arguing that if it is denied indemnity (or contribution) defendants-appellees will be allowed to retain benefits from their own alleged wrongdoing merely because Olson Farms was the only defendant in the Cackling Acres case. It quotes from United Air Lines v. Wiener, supra, that "The doctrinal basis for noncontractual indemnity among tort-feasors is unjust enrichment" and asserts that "the right to indemnity is restitutional in nature and is based on inherent injustice (sic )." The United Air Lines case arose out of a midair collision between a commercial airliner (42 passengers and crew of 5) owned and operated by United and an F-100 U.S. Air Force jet fighter carrying two Air Force pilots. There were no survivors. The appeal involved, inter alia, denial by the district court of indemnity to United from the Government in certain cases. In holding that United was entitled to indemnity, the parties not being in pari delicto, the Ninth Circuit, supra at 398, referred to
 
 
 48
 the general rule prevailing in the majority of American jurisdictions, said to derive from Merryweather v. Nixon, 8 Term.Rep. (Kings Bench 1799), that courts will refuse contribution or indemnity between concurrently negligent tortfeasors. (Footnote omitted.)
 
 And it added, supra at 399:
 
 49
 There is general agreement that indemnity is permitted where the indemnitee has only an imputed or vicarious liability because of a special relationship with the actual wrongdoer but is not personally at fault . . . .
 
 
 50
 Assuming the validity of Olson Farms' unjust enrichment theory, the United Air Lines case, nevertheless, makes no change in the rule that an intentional wrongdoer is not eligible to recover indemnity. That rule applies whether recovery is being sought under federal common law (e. g., unjust enrichment) or state law (e. g., fiduciary duty, as in the Wilshire Oil Co. case).
 
 
 51
 Olson Farms has made no claim to a right of indemnity under the laws of the State of Utah, confining itself to a claim for contribution under Utah Code Ann. (1953) § 78-39 which the district court correctly rejected (supra note 5). We note that Utah Code Ann. (1953) § 78-27-41 preserves "Any right of indemnity which may exist under present law," but the only meaningful precedent we have found makes it clear that one guilty of contributory negligence is not entitled to indemnity from a joint tortfeasor. Schneider v. Suhrmann, 8 Utah 2d 35, 327 P.2d 822 (1958).[18]
 
 
 52
 In view of all the foregoing, the order of the district court dismissing Olson Farms' amended complaint is affirmed.
 
 
 53
 HOLLOWAY, Circuit Judge, concurring in part and dissenting in part:
 
 
 54
 While agreeing with part of the majority opinion, I must respectfully dissent from the denial of contribution to plaintiff-appellant. In my opinion the complaint should not have been dismissed as to the claim for contribution on the allegations made.[1] I agree, however, that in these circumstances the dismissal as to the claim for indemnity was proper.
 
 
 55
 To me, the sounder and more equitable conclusion was reached by the majority opinion in Professional Beauty Supply, Inc. v. National Beauty Supply, Inc. v. La Maur, Inc., 594 F.2d 1179 (8th Cir.), which held, as a matter of federal law,[2] that contribution may be awarded in antitrust actions. The reasons discussed by the majority in Professional Beauty Supply include the following factors: the antitrust laws are not meant to be exclusive; there has not been such a great amount of litigation on this issue that Congress would have felt compelled to act; federal courts have formulated contribution rules in other areas without express Congressional direction; courts can take adequate steps to insure the plaintiff's ability to maintain control of his lawsuit; courts can fashion rules to adequately protect the rights of settling defendants; other areas of the law, such as securities, involve equally complex issues, yet contribution is still allowed; and the question of whether the statute would be more or less of a deterrent with contribution can be argued either way. Finally, Professional Beauty Supply notes that contribution is an equitable doctrine more nearly achieving fairness between the parties. The reasoning of the Professional Beauty Supply majority opinion is more persuasive to me for several reasons than that of the majority opinion here or that of the Fifth Circuit in Wilson P. Abraham Construction Co. v. Texas Industries, Inc., 604 F.2d 897 (5th Cir.).
 
 
 56
 I agree that at this juncture Olson Farms must be considered an intentional wrongdoer in this case.[3] However, as the Eighth Circuit concluded, I do not feel that the general rule denying contribution to intentional joint tortfeasors, see Prosser, Law of Torts, § 50 at 308 (4th ed. 1971); Restatement (Second) of Torts, § 886a, should stand as an absolute bar to contribution in antitrust actions. There are important reasons rooted in the antitrust laws for making exceptions to allow recovery by intentional tortfeasors. See Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138-39, 88 S.Ct. 1981, 20 L.Ed.2d 182.[4] We do not have a record or evidence in the instant case indicating the reasons why Olson Farms was sued and the defendants-appellees were ignored. Nevertheless, the amended complaint alleges sales by the defendants-appellees in larger amounts than the sales by Olson Farms on which prices were determined to have been unlawfully depressed. While our record of course does not deal with the motives and circumstances of the bringing of this antitrust suit, the case does present the potential of a plaintiff deliberately choosing to sue a less formidable, but financially responsible defendant, and avoiding litigation with other equally culpable parties. If contribution should be denied in such circumstances, the deterrent policy of the antitrust statutes will be significantly frustrated. The Eighth Circuit's reasoning is telling in Professional Beauty Supply, supra, 594 F.2d at 1185:
 
 
 57
 . . . We believe that the question of deterrence actually cuts both ways and on balance a rule allowing contribution is actually a greater deterrent. The fact that one tortfeasor may be held liable for all the damages arising from the antitrust violation necessarily means that other joint tortfeasors may go "scot free." This possibility of escaping all liability might cause many to be more willing, rather than less willing, to engage in wrongful activity.
 
 
 58
 . . . We are convinced that the result of automatically prohibiting contribution among antitrust defendants in all circumstances would be to allow a significant number of antitrust violators to escape liability for their wrongdoing and thereby undermine the policy of the antitrust laws.
 
 
 59
 See Corbett, Apportionment of Damages and Contribution Among Coconspirators in Antitrust Treble Damage Actions, 31 Fordham L.Rev. 111, 136-37.
 
 
 60
 In view of the deterrent function of trebled damages, Pfizer, Inc. v. India, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563, it is only logical that others engaged in the violations ought to bear some of the punishment and face deterrence. Dobbs, Remedies, § 10.7 at 704 (1973). As Dobbs notes, "(s)ince damages are trebled, there is quite a sufficient quantum of liability to punish . . . (all wrongdoers) by forcing them to share the liability." Id. at 704.
 
 
 61
 However, I agree again with the Eighth Circuit that the deciding factor should be fairness between the parties. It does not seem to me that an antitrust defendant found guilty of a violation should be rejected as a lost soul with no claim on the conscience of the courts. The result of imposing the entire treble damages liability on one defendant while denying him any right to seek contribution from others jointly involved with him in the wrong, is too extreme for me. In this instance the damages claimed against Olson Farms, as the majority opinion states, were $99,656 and, trebled, the alleged liability would have amounted to $298,968. Yet the averment is that Olson satisfied a judgment, plus costs, interests and attorneys' fees, by paying the plaintiffs in the 1971 suit the sum of $2,405,580 (P 13, amended complaint).
 
 
 62
 On the basis of the allegations of the complaint, the defendants-appellees have been unjustly enriched by the amount of the judgment against Olson Farms which was based on purchases by the defendants-appellees. (P 14, amended complaint). The allegations make a compelling claim for recovery to avoid unjust enrichment on the theory that the damages paid by Olson Farms for the other defendants were directly related to the benefit those defendants received by purchasing eggs at the unlawfully depressed prices. In these circumstances the logic of the Eighth Circuit is unanswerable as stated in Professional Beauty Supply, supra, 594 F.2d at 1185-86:
 
 
 63
 The deciding factor in our decision is fairness between the parties. We conclude that fairness requires that the right of contribution exist among joint tortfeasors at least under certain circumstances. There is an obvious lack of sense and justice in a rule which permits the entire burden of restitution of a loss for which two parties are responsible to be placed upon one alone because of the plaintiff's whim or spite, or his collusion with the other wrongdoer. See, e. g., Gomes v. Brodhurst, supra, 394 F.2d (465) at 467-68 & n. 1.
 
 
 64
 The majority opinion lays particular stress on the desirability of awaiting Congressional action on the subject of contribution. While this suggestion has obvious appeal, I cannot agree that this factor stands as a bar to judicial handling of such proper ancillary remedies until Congressional action occurs. The basic policies of the antitrust laws have been staked out in general terms. As the Supreme Court stated in National Society of Professional Engineers v. U.S., 435 U.S. 679, 688, 98 S.Ct. 1355, 1363, 55 L.Ed.2d 637:
 
 
 65
 Congress, however, did not intend the text of the Sherman Act to delineate the full meaning of the statute or its application in concrete situations. The legislative history makes it perfectly clear that it expected the courts to give shape to the statute's broad mandate by drawing on common-law tradition. (Footnote omitted)
 
 
 66
 The Eighth Circuit observed in Professional Beauty Supply, supra, 594 F.2d at 1183-84, that the courts have not been prone to await Congressional action to resolve many questions left unanswered by the statutes, nor have they hesitated to imply a right of contribution in other areas without express Congressional direction.[5]
 
 
 67
 Therefore, I conclude that awarding contribution as a judicial remedy, if an adequate showing is made, is a proper function in implementing the antitrust statutes. We are faced now with the dismissal of a complaint. Under the allegations made, a strong equitable claim for contribution may be made out. For these reasons I cannot agree that it was proper to dismiss the claim for contribution and would reverse and remand that claim for trial by the district court.
 
 
 68
 With respect to Olson Farms' claim for indemnity, I am in agreement with the majority opinion. While contribution distributes the loss among all tortfeasors, indemnity would transfer the entire loss imposed on a tortfeasor to another who, in justice and equity, should bear it. Symons v. Mueller Co., 526 F.2d 13, 16 (10th Cir.). In this case I agree that Olson Farms cannot justify indemnification, because of what has already been said above.
 
 
 69
 It is true that Olson Farms argues that it will show that its allegedly wrongful conduct was "unintentional, passive and secondary in sharp contrast to the primary and active behavior of the appellees." (Brief of Plaintiff-Appellant, 33). However, on the basis of the facts alleged by Olson Farms' complaint herein and shown by our opinion in Cackling Acres, Inc. v. Olson Farms, Inc., 541 F.2d 242 (10th Cir.), cert. denied, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572, I feel that we must treat Olson Farms as an intentional tortfeasor. For reasons stated in Professional Beauty Supply, supra, 594 F.2d at 1186, I agree with the majority that indemnity should not be awarded to intentional wrongdoers and concur in the majority opinion in the instant case as to the dismissal of Olson Farms' indemnity claim.
 
 
 70
 Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY, LOGAN and SEYMOUR, Circuit Judges.
 
 PETITION ON REHEARING EN BANC
 
 71
 PER CURIAM.
 
 
 72
 This case was originally heard by a panel of this Court consisting of Judges Holloway and McWilliams, and the Honorable Jack R. Miller, Judge of the United States Court of Customs and Patent Appeals, sitting by designation. The opinion of the panel, which affirmed the District Court, was filed on November 8, 1979. Judge Miller authored the panel's opinion, Judge McWilliams concurring therein, with Judge Holloway concurring in part and dissenting in part.
 
 
 73
 Thereafter, a majority of the Court voted to grant the appellant's petition for rehearing en banc. The case was reargued on September 15, 1980, to the active members of the Court, sitting en banc, all judges participating. After oral argument, the majority of the Court voted to adhere to the opinion of the panel previously filed on November 8, 1979, which had not been withdrawn. However, having been advised that there were then pending in the United States Supreme Court several cases involving at least one of the critical issues presented in the instant case, the Court determined to hold in abeyance any final resolution of the matter, awaiting pronouncement from the Supreme Court. The Supreme Court has now spoken.
 
 
 74
 In Texas Industries, Inc. v. Radcliff Materials, Inc., -- U.S. --, 101 S.Ct. 2061, 68 L.Ed.2d --, 1981, the Supreme Court, in a unanimous opinion, held that the federal law does not allow an antitrust defendant to recover any contribution from alleged co-conspirators. Believing, then, that the opinion of the panel of this Court previously filed is in complete accord with Texas Industries, this Court does now adhere to the opinion of the panel.
 
 
 
 *
 The Honorable Jack R. Miller, Judge of the United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 Safeway Stores, Inc., is a Maryland corporation doing business in Utah; the other defendants-appellees are Utah corporations
 
 
 [2]
 On motion of Olson Farms, Snow White Egg Co. was added as a defendant by order dated May 23, 1977
 
 
 [3]
 The judgment was affirmed by this court on appeal. Cackling Acres, Inc. v. Olson Farms, Inc., 541 F.2d 242 (10th Cir. 1976), cert. denied, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977). On or about March 23, 1977, Olson Farms satisfied the judgment which, with interest, amounted to in excess of $2,400,000
 
 
 [4]
 The conspiracies involved Olson Farms and, allegedly, defendants-appellees and some twenty other business firms and individuals. The jury found that violations occurred under both sections 1 and 2 of the Sherman Act affecting all fourteen egg producers, but awarded damages to four producers under section 1 and to ten producers under section 2. It did not specifically find that defendants-appellees had violated the antitrust laws, although such a finding could be inferred from the producers' claimed sales to defendants-appellees and the claimed damages attributable thereto
 Claimed
 Egg Buyer Sales (doz.) Damages
------------------------ ------------ ---------
Safeway Stores, Inc. 6,297,999 $ 271,129
Egg Products Co. 4,497,222 197,618
Snow White Egg Co. 3,574,070 157,052
Countryside Farms, Inc.,
 and Gusto Marketing
 Systems, Inc. 2,724,824 119,961
Olson Farms 2,288,650 99,656
 
 
 [5]
 In its complaint, Olson Farms also alleges that it is entitled to contribution from defendants-appellees as joint tortfeasors under the State of Utah's contribution statute (Utah Code Ann. § 78-27-39 et seq.), but the district court concluded that this was without merit because (1) Olson Farms' right to contribution "is governed exclusively by the Federal antitrust laws," and (2) the wrongful acts occurred prior to the effective date of the statute (May 8, 1973). Although the latter conclusion appears to be correct, Brunyer v. Salt Lake County, 551 P.2d 521 (Utah 1976), it is unnecessary to reach the issue since it is our conclusion that a right of contribution arising under the federal antitrust laws is a matter of federal law. Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 346, 91 S.Ct. 795, 810, 28 L.Ed.2d 77 (1971), and Professional Beauty Supply, Inc. v. National Beauty Supply, Inc. v. La Maur Inc., 594 F.2d 1179 (8th Cir. 1979). For dictum to the contrary, see Webster Motor Car Co. v. Zell Motor Car Co., 234 F.2d 616, 619 (4th Cir. 1956)
 
 
 [6]
 W. Prosser, Law of Torts § 50 at 306-07 (4th ed. 1971), states that the great majority of our courts have refused to permit contribution. He criticizes this position, but only in the case of "equally, unintentionally responsible" defendants. See Restatement of Restitution § 88 (1937)
 
 
 [7]
 Professional Beauty Supply, Inc. v. National Beauty Supply, Inc. v. La Maur Inc., 594 F.2d 1179 (8th Cir. 1979), discussed infra
 
 
 [8]
 Defendants-appellees, citing the reporter's transcript in Cackling Acres, Inc. v. Olson Farms, Inc., supra, point out that the trial court instructed the jury that it could find Olson Farms liable as a conspirator only if it determined that Olson Farms intentionally entered into the conspiracy
 
 
 [9]
 Three-judge panel consisting of Circuit Judges Heaney and Stephenson, and Senior District Judge Hanson, sitting by designation, who dissented
 
 
 [10]
 Professional, a wholesaler of beauty supplies, alleged in its complaint that National, also a wholesaler of beauty supplies, demanded that La Maur, a manufacturer of beauty supplies, grant National an exclusive dealership for La Maur's products in Minnesota; and that, as a result of such demands, Professional was terminated as a La Maur dealer
 
 
 [11]
 National renewed this argument before the Eighth Circuit, contending that, at most, it was secondarily liable to Professional
 
 
 [12]
 We note that the statement is almost a quotation from W. Prosser, Law of Torts § 50 at 307. However, the statement omits Prosser's qualification that the parties be "equally, unintentionally responsible." See note 6, supra
 
 
 [13]
 One proposal has been introduced in the 96th Congress (1st Sess.) S. 1468, the Antitrust Equal Enforcement Act of 1979. See testimony of Hon. John Shenefield, Asst. Atty. Gen. (Antitrust Div.), U.S. Dept. of Justice, relating to the proposed bill and to contribution in antitrust litigation. Subcommittee on Antitrust, Monopoly and Business Rights, Committee on the Judiciary, U.S. Senate, June 8, 1979
 
 
 [14]
 Shenefield testimony, id
 
 
 [15]
 In considering such an exception, the interests of judicial economy would seem to require that account be taken of whether or not the unintentional violator made a reasonable effort under Rules 13 or 14, Fed.R.Civ.P., to bring in the parties against whom contribution is sought and to have their respective liabilities determined. Even then, the trial court might well require evidence pertaining to factors such as those listed by Justice White in the Perma Life Mufflers case, supra. As with any general rule of law, exceptions may be squeezed out in the rare "ad absurdum" or "shock the conscience" type case, but not where contribution might predictably tend to frustrate observance and enforcement of the antitrust laws. See Kline v. Coldwell, Bankers & Co., 508 F.2d 226, 234-35 (9th Cir. 1974), cert. denied, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975)
 
 
 [16]
 Shenefield testimony, supra note 12; W. Prosser, Law of Torts, supra at 308
 
 
 [17]
 Olson Farms argues that it is entitled "to be totally indemnified" with respect to its payment of claims of those plaintiffs who had not dealt with it. However, that is not the way the complaint reads; moreover, one who has violated the antitrust laws is liable to others besides those with whom he did business. Walker Distributing Co. v. Lucky Lager Brewing Co., 323 F.2d 1, 8 (9th Cir. 1963)
 
 
 [18]
 It is unnecessary to decide whether Utah state law on indemnity could apply, and we merely note that this is not a diversity suit (as was Wilshire Oil Co.), which would argue for applicability of federal common law on indemnity because of its impact on federal antitrust laws. See Paul, Contribution and Indemnification among Antitrust Coconspirators Revisited, 41 Fordham L.Rev. 67 (1972)
 
 
 [1]
 It should be noted at the outset that this matter is before the court on appeal from an order dismissing the appellant Olson Farms' complaint. In such a case the allegations of the complaint are accepted as true and the complaint may be dismissed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80; Wilshire Oil Company of Texas v. Riffe, 409 F.2d 1277 (10th Cir.)
 
 
 [2]
 The majority opinion takes the view that federal law governs as to the availability of contribution or indemnity here, and I agree. Several factors, particularly the desirability of uniformity, lead to this conclusion. See Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165; see Note, The Role of State Law in Federal Antitrust Treble Damage Actions, 75 Harv.L.Rev. 1395, 1401 (1962); Note, Toward a Workable Rule of Contribution in the Federal Courts, 65 Columbia L.Rev. 123, 129 (1965); Hart and Weschsler, The Federal Courts and The Federal System, 2d Edit., 800-805 (1973)
 
 
 [3]
 The amended complaint of Olson Farms alleges that "(t)he liability of Olson Farms to the plaintiff producers in the 1971 suit is based upon what the producers allegedly would have been paid by defendants herein and Olson Farms but for the alleged conspiracies." In the underlying action the jury found in favor of all fourteen plaintiffs on a Section 1 violation of conspiracy to restrain trade and a Section 2 violation of conspiracy to monopolize. The jury further found in favor of four plaintiffs who claimed a Section 2 violation of attempt to monopolize
 From the allegations of the amended complaint and the circumstances apparent in the original action where the judgment against Olson Farms was affirmed, Cackling Acres, Inc. v. Olson Farms, Inc., 541 F.2d 242 (10th Cir.), cert. denied, 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572, we must regard Olson Farms as an intentional wrongdoer since conspiracy and attempt both require a finding of specific intent. See E. J. Delaney Corp. v. Bonne Bell, Inc., 525 F.2d 296 (10th Cir.), cert. denied, 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758.
 
 
 [4]
 This Court has followed Perma Life in Semke v. Enid Automobile Dealers Ass'n, 456 F.2d 1361, 1369 (10th Cir.), and Sahm v. V-I Oil Co., 402 F.2d 69, 72 (10th Cir.)
 
 
 [5]
 These areas include federal sex discrimination cases, e. g., Stevenson v. International Paper Co., 432 F.Supp. 390 (W.D.La.); Grogg v. General Motors Corp., 72 F.R.D. 523 (S.D.N.Y.); and aviation collisions, e. g., Kohr v. Allegheny Airlines, Inc., 504 F.2d 400 (7th Cir.), cert. denied, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470