2004 OK CIV APP 40

**Barbara TILLMAN, an individual, Plaintiff/Appellant,**

v.

**James D. SHOFNER, an individual, Defendant/Appellee.**

**No. 99,690.**

Court of Civil Appeals of Oklahoma, Division No. 1.

March 25, 2004.

---

[redacted]

R. Tom Hillis, David J. Schaffer, Barkley, Titus, Hillis & Reynolds, Tulsa, OK, For Plaintiff/Appellant.

Joseph R. Farris, Paula J. Quillin, Jody R. Nathan, Feldman, Franden, Woodard, Farris & Boudreau, Tulsa, OK, For Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Presiding Judge:

¶ 1 Barbara Tillman and her attorney, Jim D. Shofner, conspired to defraud the United States Internal Revenue Service and the United States Bankruptcy Court. They each pled guilty in the United States District Court for the Northern District of Oklahoma and were sentenced. Tillman sued her lawyer, Shofner, in the District Court of Tulsa County for conversion and professional negligence with respect to activities which related to their criminal enterprise. The District Court of Tulsa County granted summary judgment in favor of Defendant Shofner.[1] We affirm.

[redacted] ¶ 2 The facts to which Tillman pled are attached as an appendix. In her conversion claim against Shofner, she alleged that in 1996, he received sale proceeds of the Mill Creek Property, gave her some of the funds occasionally, did not keep records and misappropriated the remainder of the money for his own use.[2] At various times, she requested the money, but he refused to give it to her. Tillman filed her petition November 8, 1999. A claim for conversion must be filed within two years from the time the cause of action accrued. 12 O.S. § 95(3). Shofner asserted the affirmative defense of statute of limitations.[3] "When a defendant moves for a summary judgment on the basis of an affirmative defense, he must show that there is no substantial controversy as to the facts that are material to the affirmative defense and that the facts and inferences that may reasonably be drawn from them are in his favor. When the moving party makes the appropriate showing, the adverse party must then demonstrate the existence of a material fact that would justify a trial of the issue." *Martin v. Chapel, Wilkinson, Riggs, and Abney,* 1981 OK 134, ¶ 7, 637 P.2d 81, 84.

[redacted] ¶ 3 Shofner submitted evidence that he received $121,338.46 from the closing on Tillman's house. The proceeds were deposited in Shofner's trust accounts.

> Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, ..., or any wrongful exercise or assumption of authority personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time. The act must be essentially tortious, but it is not essential to conversion sufficient to support the action of trover that the defendant should have the complete manucaption of the property, or that he apply the property to his own use, if he has exercised dominion over it in exclusion of, in defiance of, or inconsistent with the owner's right.

1. Tillman asserted other claims against Shofner which were dismissed after the summary judgment ruling in order to allow this appeal to proceed.

2. The Plea Agreement indicates that proceeds were obtained April 30, 1996, endorsed by Tillman, and given to Shofner for deposit into Shofner's trust account.

3. Tillman argued in her Response Brief that Shofner waived the statute of limitations and the *in pari delicto* defenses because he failed to file an answer asserting these affirmative defenses. Shofner's Answer, filed October 29, 2002, asserting these defenses, is part of the record on appeal.

*United States Zinc, Co. v. Colburn,* 1927 OK 76 255 P. 688, 689. Also see *Welty v. Martinaire of Oklahoma, Inc.,* 1994 OK 10, 867 P.2d 1273, 1275 ("Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.") "Simple conversion occurs when the attorney uses a client's money for some purpose other than that for which it was intended." *State ex rel. Oklahoma Bar Ass'n. v. Stow,* 1998 OK 105, 975 P.2d 869, 874.

¶ 4 Shofner presented 23 checks totaling over $67,973.46 as paid to or on behalf of Tillman. Shofner also presented other evidence that $121,478.46 was distributed to or on behalf of Tillman. Tillman acknowledged in her Plea Agreement that she received 21 checks from Shofner between May 1996 and November 1, 1996 totaling $110,133.46. However, in her affidavit attached to her Response Brief, Tillman denies that she received the proceeds of 23 checks, denies receiving the proceeds of a $24,333 cashier's check, and denies receiving $9,000 in cash from Shofner in November 1996. In her Response Brief, Tillman claims that Shofner forged Tillman's endorsement on the checks and cashed them himself, or required Tillman to give Shofner the cash after Tillman cashed them. Rather, Tillman testified that Shofner had control over the money and there were "[l]ots of times he wouldn't let me have any." She also testified there were several occasions when they would meet at a bank, Shofner would give Tillman a check to cash, then Tillman would give the cash to Shofner. These events occurred more than two years before the conversion claim was filed. Thus, while Tillman may claim that Shofner's "final refusal" occurred in December 1998, it is clear that, according to Tillman, she knew that Shofner was exercising control and dominion over her funds in his trust account, contrary to her wishes. That is sufficient to demonstrate conversion. Based on these facts, neither tolling nor estoppel would be applicable to this claim. Tillman's conversion claim was barred by the statute of limitations.

■ ¶ 5 Shofner next contends that Tillman's criminal conduct precludes her from seeking damages against him as a matter of law. We agree. "If it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment for said party." 12 O.S. Ch. 2, App. 1, District Court Rule 13(e).

¶ 6 The facts relating to the alleged professional negligence were the same to which Tillman pled in her criminal conspiracy. Consequently, one need go no further than to remark that any damage proximately caused to Tillman was the result of her decision to criminally conspire with Shofner, and not from following negligent advice.

■ ¶ 7 The defense of *in pari delicto* has been recognized in Oklahoma. The Oklahoma Supreme Court has referred to the general and universal rule "that where parties to an immoral or illegal transaction are *in pari delicto* with each other, each is estopped, as to the other, to take advantage of his own moral turpitude, illegal act, or criminal conduct for purposes of recovering damages for injuries sustained as a consequence of their joint wrong.... And as between parties *in pari delicto* the law will aid neither, but will leave them as it finds them." *Bowlan v. Lunsford,* 1936 OK 158, 54 P.2d 666, 668. Also see *Ohio Casualty Ins. Co. v. Todd,* 1991 OK 54, 813 P.2d 508, 517–518 (Opala concurring); *Taylor v. Hesser,* 1998 OK CIV APP 151, 991 P.2d 35, 38 ("Assuming, arguendo, that shooting a paintball gun at another person violates § 1364, Taylor was *in pari delicto* with Martin, Hesser and Huxman. Therefore, Taylor is estopped from taking advantage of his own possibly illegal act to recover damages.")

¶ 8 In connection with an attempt to collect on an instrument given for a gambling debt, the Supreme Court upheld the rule that the instrument was invalid:

> The basis of this rule is that the law will not lend its aid to a transaction in violation of law, and particularly to a participant ..., "The well settled principle of law is, that no one knowingly participating in a transaction intended to accomplish a purpose forbidden by law can bring an action for any cause directly

connected with that illegality." [Citation omitted.]

*Brinley v. Williams,* 1941 OK 141, 114 P.2d 463, 464–65.

¶ 9 A factually similar situation occurred in *Butler v. Mooers,* 2001 ME 56, 771 A.2d 1034, in which a former client sued his lawyer for legal malpractice after the client pled guilty to bank fraud. The attorney also pled guilty to the improper handling of some of the clients' funds. The court first held the doctrine of collateral estoppel was dispositive of the issues involved in the client's conviction. The court stated:

> Thus, even if we assume that [Lawyer] negligently provided [Client] with inaccurate legal advice, [Client's] plea of guilty and his acknowledgment that he 'knowingly and wilfully' defrauded the banks precludes a finding that his criminal conduct was nonetheless proximately caused by [Lawyer's] negligent legal advice.

*Id.* at ¶ 9, p. 1037.

¶ 10 In *Heyman v. Gable, Gotwals, Mock, Schwabe, Kihle, Gaberino,* 1999 OK CIV APP 132, 994 P.2d 92, Clients and Partners were co-owners of a gas-gathering business. Partners wanted to sell the company, Clients did not, but Clients agreed to sell if a certain minimum bid were obtained. Clients hired the law firm, Gable Gotwals, to prepare a Standstill Agreement. A bid was received which appeared to satisfy the requirements, but Clients, relying on the Standstill Agreement's language and the firm's advice, decided the bid was unacceptable and blocked the purchase. The Standstill Agreement expired, Clients and Partners then had a bidding war and Clients won. Partners were paid less for their shares than they would have been had they been able to accept the bid under the Standstill Agreement. Partners sued and a verdict for fraud was entered against Clients. Clients then sued the law firm for legal malpractice. The Court of Civil Appeals held that Clients' "fraud was independent of the alleged negligent drafting of the SA and of the trial representation by the Firm ... It would be contrary to public

policy to allow the Clients here to benefit from their own confirmed fraud and recover a monetary judgment from the Firm to indemnify them for their fraud." *Id.* at ¶ 12, p. 94.

 ¶ 11 Tillman has argued that she was not quite as guilty as Shofner and should be allowed to recover on that ground. We disagree. When joint tortfeasors are not *in pari delicto* "and their negligence is substantially different not merely in degree but in character, it is generally recognized that indemnity may be awarded." *Olson Farms, Inc. v. Safeway Stores, Incorporated,* 649 F.2d 1370, 1378 (10th Cir.1979). The rule, however, is that "an intentional wrongdoer is not eligible to recover indemnity." *Id.* at 1379. Tillman and Shofner both pled guilty to conspiring to commit bankruptcy fraud by knowingly and fraudulently concealing money in Tillman's bankruptcy case. They accomplished the fraud by filing a false bankruptcy petition and schedules. In addition, Tillman filed a false tax return.

¶ 12 Tillman argues that differing degrees of guilt is shown by the different sentences imposed by the federal court.[4] The fact that one received a lesser sentence under the Federal Sentencing Guidelines is not dispositive in that the Guidelines consider many individual factors. Indeed, in this case Tillman argued for a downward departure because she paid restitution of $121,338.46. The federal judge granted a two point reduction in offense total due to the restitution, which resulted in Tillman's lower sentence, not a difference in culpability.

¶ 13 Shofner cites two cases, with similar facts, that are compelling. In *Evans v. Cameron,* 121 Wis.2d 421, 360 N.W.2d 25 (1985), the client sued her attorney for damages resulting from her false testimony in a bankruptcy proceeding. She claimed her attorney advised her to lie in order to hide $10,000 in cash from creditors. In response to the argument that a client has the right to rely on the advice of counsel, the court said:

---

4. Tillman received 5 months incarceration and was ordered to pay restitution of $121,338.46. Shofner received 18 months incarceration. The

court refused Shofner's request for downward departure because of his status as an attorney.

There may be circumstances in which the advice given by an attorney is so complex that the client would be unaware of the wrongfulness involved in following that advice. In such circumstances, more weight may be given to the influence an attorney will have over the client and the amount of · reliance which the client can justifiably place in the attorney. *The wrongfulness of lying while under oath, however, is apparent.* Absent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, *the client's deliberate act of lying under oath places that client in pari delicto with the attorney who advised that client to lie.*

*Id.* at 428, 360 N.W.2d 25. (Emphasis added.)

The client then argued that public policy may intervene to allow the client to recover against the attorney. The court responded:

Although the public interest is served by discouraging attorney misconduct, it would be inappropriate to promote that interest by removing the damage to those who deliberately and willfully lie under oath in bankruptcy proceedings. A Court should not encourage others to commit illegal acts upon their lawyer's advice by allowing the perpetrators to believe that a suit against the attorney will allow them to obtain relief from any damage they might suffer if caught. The attorney's misconduct of advising clients to perform illegal acts should be discouraged by the threat of attorney disciplinary action. ·

¶ 14 The second case is *Pantely v. Garris, Garris & Garris,* 180 Mich.App. 768, 447 N.W.2d 864 (1989). The client lied by testifying she had lived in the county for at least ten days before the filing of a divorce complaint. The client argued that she was not *in pari delicto* with her lawyer because she lied at the direction of her attorney· at a time when she was emotionally distraught and desperate to secure a divorce. The court found she was *in pari delicto:*

We can readily envision legal matters so complex and ethical dilemmas so profound that a client could follow an attorney's advice, do wrong and still maintain suit on the basis of not being equally at fault. *But perjury is not complex; and telling the truth poses no dilemma.* Even against the backdrop of a moral relativism that passes for intellectual sophistication in contemporary America, perjury is wrong. More pointedly, it is a crime. M.C.L. § 750.422; M.S.A. § 28.664. *A law degree does not add to one's awareness that perjury is immoral and illegal, any more 'than an accounting degree adds to one's awareness that tax fraud is immoral and illegal.* *Id.* at 776, 447 N.W.2d 864. (Emphasis added.)

¶ 15 This principle of law finds support in other states. In *General Car & Truck Leasing System, Inc. v. Lane & Waterman,* 557 N.W.2d 274 (Iowa 1996), the client signed and submitted a false affidavit, on advice of counsel, to the Patent and Trademark Office to obtain federal registration of a service mark. The court found the client and lawyer *in pari delicto,* even though the lawyer may have given negligent advice regarding the scope of the registration. The potentially negligent advice did not change the deceptive nature of the affidavit. In *Blain v. The Doctor's Co.,* 222 Cal.App.3d 1048, 272 Cal. Rptr. 250, 261 (1990), the California Court of Appeals dismissed a physician's lawsuit against his former lawyer for advising the doctor to lie at his deposition in a previous malpractice action. It stated, "Lay persons may be confused about the legality of sham transactions employed to frustrate creditors. But there is little plausibility in the claim that one was confused about the legality of lying in the teeth of the oath just sworn." *Id.* at 1062, 258. Also, see *Feld & Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick & Cabot,* 312 Pa.Super. 125, 458 A.2d 545, 552 (1983) in which the client's malpractice claim was dismissed. The lawyers had advised the clients to commit perjury, falsify exhibits and offer a potential witness a bribe. They were *in pari delicto.*[5]

5. However, the court held that although the client's action for compensatory and punitive damages was barred by the doctrine of *in pari*

*delicto,* "... when a lawyer has by immoral or illegal conduct violated his professional obligations to his client, an action by the client to

¶ 16 We agree that the wrongfulness of lying under oath and submitting false pleadings to a court is readily apparent, and places Tillman *in pari delicto* with Shofner. To hold otherwise would supply a safety net to the prevaricating client to recover from her attorney the damages resulting from the lie. We agree that the attorney's misconduct is amply discouraged by the threats of criminal sanctions and disciplinary proceedings.[6]

¶ 17 The trial court properly granted summary judgment in favor of Defendant. We AFFIRM.

ADAMS, J., and JONES, J., concur.

## PLEA AGREEMENT OF BARBARA JEAN TILLMAN

I, BARBARA JEAN TILLMAN, admit that I, between about June 26, 1995, and March 24, 1997, in the Northern District of Oklahoma, did conspire with JIM D. SHOFNER (Shofner) to commit concealment of assets in violation of Title 18, U.S.C., § 152(7), and to defraud the United States Department of the Treasury, Internal Revenue Service, by defeating the lawful functions of the Internal Revenue Service in the collection of the revenue and by knowingly and fraudulently concealing my money and property from the appointed trustee and creditors, including the Internal Revenue Service, in the case of Barbie Hale, a/k/a B. Hale, case no 96–01454–R, in the United States Bankruptcy Court for the Northern District of Oklahoma with the intent to defeat the provisions of Title 11 and the payment of said creditors, including the Internal Revenue Service, and did knowingly and voluntarily participate in the conspiracy, knowing the essential objectives of the conspiracy, by joining in the commission of the following overt acts to effect the conspiracy's objects:

(1) On May 22, 1995, I signed a contract for the purchase of property described as Lot 15, Block 4, Mill Creek Pond, Plat No. 3897, a/k/a 6114 E. 98th Street, Tulsa, Oklahoma (the property), but on June 26, 1995, Shofner and I instructed the settlement agent to prepare the deed to the property in the name Jean MacHale, a pseudonym. I and Shofner used to conceal the home's true ownership from the Internal Revenue Service and other creditors.

(2) In order to conceal assets from the Internal Revenue Service and to defeat the payment of creditors in my bankruptcy case, on April 19, 1996, Shofner and I participated in closing transactions respecting the sale of the property for net proceeds of $21,338.46 cash and $100,000.00 due on April 30, 1996, and payable to Jean MacHale. With the intent to deceive the Internal Revenue Service in the ascertainment and collection of revenue, I signed an IRS Reporting Information form respecting the sale of the property that was falsely completed with a social security number that was not assigned to me.

(3) On April 22, 1996, Shofner and I caused to be filed in the United States Bankruptcy Court for the Northern District of Oklahoma a voluntary petition seeking relief pursuant to chapter 7 of Title 11, United States Code. Simultaneously, Shofner and I caused to be filed with the Bankruptcy Court schedules and a statement of financial affairs that falsely concealed my interest in the property and the $121,338.46 payable to me.

(4) On April 30, 1996, by agreement with Shofner, I endorsed and delivered to Shofner for deposit to his attorney trust accounts two closing proceeds checks payable to Jean MacHale in the total amount of $121,338.46.

(5) Between May 3, 1996, and November 1, 1996, by agreement with Shofner, I requested and received 21 checks payable to me, Jean MacHale, and another individual that totaled approximately $110,133.46.

(6) On March 24, 1997, I, with Shofner's concurrence, caused a 1996 U.S. Individual Income Tax Return (Form 1040), falsely reporting the sale of the property, to be prepared on behalf of, and signed by, another individual in Tulsa, Oklahoma. The return was subsequently filed with the Internal Rev-

---

recover the lawyer's fee will not be barred on the lawyer's plea that the client also engaged in immoral or illegal conduct." *Id.* at 142.

6. Shofner was disbarred because of his conviction. *State ex rel. Oklahoma Bar Assn. v. Shofner,* 2002 OK 84, 60 P.3d 1024.

enue Service. Then I filed my 1996 income tax return with the Internal Revenue Service, I falsely omitted the sale of the property in order to deceive the Internal Revenue Service.

/S/_____ 1-23-01
BARBARA JEAN TILLMAN, Defendant